DAVIS *v.* TAYLOR

[No. 235, September Term, 1957.]

*Decided May 21, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Walter C. Anderson* and *John W. T. Webb,* with whom were *Webb & Travers* on the brief, for appellants.

*John B. Robins,* with whom were *Seth P. Taylor, Stanley G. Robins* and *Robins and Robins* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal in two consolidated cases arises out of an automobile collision. In one case the appellee ('Taylor), the driver and owner of one car, sought recovery for property damage against William Carlton Davis, the driver of the other car. Carlton H. Davis, the owner of the other car, countered with a suit for property damage against Taylor, on his own behalf and on behalf of his insurance carrier. It is conceded that William Carlton Davis (Davis) was not the agent or servant of his father, Carlton H. Davis, at the time of the accident, and hence that the latter would not be barred by the negligence, if any, of his son. Prayers were offered by Davis for a directed verdict in the first case, on the ground

of Taylor's contributory negligence, and in the second case on the ground of Taylor's primary negligence. The trial court submitted the cases to a jury and after verdicts for Taylor in both cases, denied motions for judgments n. o. v.

The facts are virtually undisputed. Taylor was driving his car west on William Street, and Davis north on Davis Street, which is a through highway. Taylor testified he stopped, as required by the stop sign, and looked both ways. He did not see the Davis car until he was "about middle ways, or right in the center" of the intersection, when he saw it 30 or 40 feet to his left coming "like a bullet". The impact was on his left front door. He had "crossed the center of the intersection" when he was hit. The other car made "a little turn to the left". Later, he testified that he was "past Davis Street" when he was hit. "Of course Davis Street is a little wider on the south side than it is on the north side". He was "all the way across". Later, he said he was "about half way across". He was asked whether the skidmarks would not show exactly where the impact took place, and he replied: "I would think so, yes, about." He saw the skidmarks left by the other car.

Officer Taylor testified he came to the scene of the accident and found the Taylor car damaged on its front and entire left side, and the Davis car on the front and right side. The Taylor car was upside down over an embankment on the northwest corner, the Davis car about 60 feet away to the north. He fixed the point of impact as in the center of the intersection. He measured skidmarks left by the Davis car 90 feet in length, veering slightly to the left, that is, from the northbound or right hand lane towards the center of Davis Street. He found considerable debris and glass at the point of impact, and fragments extending over to the northwest corner. He measured the skidmarks with a steel tape. He stated, without objection, that in his opinion the impact was "right on the front of the Davis car" and "right on the left door" of the Taylor car. The witness Williams, who came to the scene with his tow truck, helped the officer measure the skidmarks, and corroborated his statements. Davis was in military service and did not testify.

The appellee argues that there was evidence of excessive speed on the part of the favored driver, and that there was no evidence of negligence as a matter of law, on Taylor's part, because he was not bound to anticipate the excessive speed of the other car. He also argues that there was testimony that the unfavored driver had completely cleared the intersection at the time of the accident.

On the first point, it is sufficient to say that we adhere to the boulevard rule so clearly laid down in the Maryland cases. It was the duty of the unfavored driver to yield the right of way, and he cannot relieve himself of that duty by a claim that the favored driver was exceeding the speed limit. To cite only a few of the cases so holding, see *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 179; *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354; *Fowler v. DeFontes,* 211 Md. 568. The appellee concedes that the doctrine of last clear chance is inapplicable.

On the second point, the recent case of *Schwartz v. Price,* 215 Md. 43, is controlling. Not only was Taylor's final word that the point of impact was at about the center of the intersection, but the physical evidence clearly established it as a fact, and he agreed that the end of the skidmarks would show the point of impact. Even if the point of impact was not in the center, because the favored car veered to the left to avoid the collision, the failure to yield the right of way would still be the proximate cause of the collision. In the *Schwartz* case, *supra,* where there was some evidence that the unfavored vehicle veered to the left and the point of impact was not strictly within the intersection, we said (p. 48): "* * * we think the cause of the collision was his failure to yield the right of way to a favored vehicle that he failed to observe."

Counsel stipulated that the damages to the Davis car were $920.29, and we shall enter judgment for that amount under Maryland Rule 552. *Richardson v. Boato,* 207 Md. 301, 306.

> *Judgments in favor of Taylor reversed, and judgment entered in favor of Carlton H. Davis, to his own use, etc., for $920.29, costs to be paid by the appellee in both cases.*