ROBERT E. DEAN ET AL. *v.* DOUGLAS THOMAS
REDMILES, PERS. REP. OF THE ESTATE OF
DOUGLAS THOMAS REDMILES,
JR., ET AL.

[No. 24, September Term, 1976.]

*Decided April 19, 1977.*

138

*Motion for reconsideration filed May 13, 1977; opinion modified and motion denied May 31, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Edward P. Camus,* with whom were *Camus & Perry* and *Darlene G. Perry* on the brief, for Clara W. Muller et al., part of appellants. *William R. Hymes,* with whom was *John C. Corbley* on the brief, for Robert E. Dean, other appellant.

*Frederick J. Green, Jr.,* with whom were *G. Joseph Sills, Jr.,* and *Lord, Whip, Coughlan & Green, P.A., Lansdale G. Sasscer, Jr.,* and *Foster H. Fanseen* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court. MURPHY, C. J., dissents and filed a dissenting opinion at page 170 *infra.*

Once again we must consider the proper application of the "boulevard law." [1] In this instance the issue presented arises under Maryland Code (1957, 1970 Repl. Vol.) Art. 66½, § 11-404 relative to "enter[ing] or cross[ing] a highway from a private road or driveway . . . ." The most common application, however, arises under § 11-403 stating that vehicles on "through highways" (a term defined in § 1-198) are to have the right-of-way.

We are concerned here with the liability of a favored driver to a passenger in his vehicle. Since we conclude that the trial judge (Taylor, J.) correctly determined that the boulevard law did not insulate this driver from liability to

---

1. In so doing we conclude that the title "Bothersome Boulevards" used by John W. T. Webb, Esq., in 26 Md. L. Rev. 111 (1966), is an apt one.

his passenger, we shall reverse the judgment of the Court of Special Appeals in *Redmiles v. Muller*, 29 Md. App. 304, 348 A. 2d 291 (1975).

The facts are fully set forth in the opinion of the Court of Special Appeals. We shall only relate such facts here as are necessary for a clear understanding of the opinion.

Appellants, Clara W. Muller and Robert E. Moore, parents of Terry Ann Moore (passenger in the favored vehicle who was fatally injured), and Clara W. Muller, administratrix of her estate, sued Douglas Thomas Redmiles, personal representative of the estate of Douglas Thomas Redmiles, Jr., deceased (the Redmiles estate or the estate); Mr. Redmiles, Sr.; and Robert E. Dean (Dean) (owner and operator of the unfavored vehicle). Redmiles, Jr. (Redmiles) was the operator of the favored vehicle which was owned by his father. After a jury trial a judgment for costs was entered in favor of Mr. Redmiles, Sr. Judgments for monetary damages were recorded against Dean and the estate in favor of the estate of Miss Moore and her surviving parents. The Redmiles estate appealed to the Court of Special Appeals. Dean did not appeal. However, he appears as an appellant here, indicating that he would like company in the matter of the judgment for damages. The Court of Special Appeals "conclude[d] that the Boulevard Rule was applicable [,] . . . that there was no evidence of negligence on the part of the favored driver which was the proximate cause of the collision [, and thus] [t]he lower court erred . . . in refusing to grant a directed verdict in favor of appellant Redmiles."

The sole issue presented by the appellants is whether the Court of Special Appeals erred in concluding that the negligence of the favored driver should not have been submitted to the jury. Our conclusion that it did err presents the issue which the Redmiles estate asks that we decide in the event of such a conclusion, whether the trial court erred in its instructions to the jury. The latter point was not decided by the Court of Special Appeals because of its decision relative to the boulevard law. We decide the point in the interest of economy of judicial time.

## 1. The facts

The incident in question occurred shortly before midnight on Friday, January 14, 1972, on U. S. Rt. 1 in front of the Red Rooster Inn in Howard County. The highway at that point runs generally north and south. It is a four lane highway with a double yellow line separating northbound and southbound traffic. The speed limit in the area was 50 miles per hour. The weather was clear; the temperature, cold; and the roadway, dry. The Red Rooster Inn is located on the west side of the highway about 400 feet south of the crest of a hill.

Dean had been traveling in a southerly direction on Rt. 1. At the request of his female companion he turned around and proceeded north to visit the Red Rooster Inn. He made a left turn across southbound traffic for the purpose of parking in front of the door in the center of the Red Rooster Inn building so that when his vehicle was parked it would be perpendicular to the flow of traffic on the highway. He found that his proposed parking space was not wide enough for the front of his car since the two vehicles on each side of the space were parked at such an angle that they were closer together in the front than in the rear. He began to back out of the space after, as he put it, "making certain there was no approaching southbound traffic." His car stalled, not being equipped with an automatic transmission. A collision ensued between the vehicle operated by Redmiles and the Dean vehicle. Redmiles and his passenger, Terry Ann Moore, were killed in the collision. There was testimony that the time the Dean vehicle was stopped in the boulevard prior to the collision "might have been a minute, maybe a little longer." At the speeds here involved this could have meant that Redmiles was a mile down the road when Dean's car stalled.

Redmiles was proceeding in a southerly direction on Rt. 1. He and Miss Moore were returning from a visit to the nearby home of a friend. William E. Welte (Welte) had visited the same home. Welte and Redmiles left within a few minutes of each other. Welte, too, was proceeding south on Rt. 1. In response to a question as to whether "the Redmiles car [was]

in front of . . . , alongside, or behind" him when he reached the crest of the hill immediately north of the Red Rooster to which reference has been previously made, Welte replied:

> "I can't really recall whether it was in front of me or behind me, but it was close to me, more or less beside me, maybe a little in front or a little behind. I can't be sure."

He observed the Dean vehicle "sitting sideways in the slow lane, south, on the south part of the Red Rooster." Welte "hit [his] brakes" when he observed the Dean vehicle. He "guess[ed] they locked up and [he] skidded and went off to the left to get out of the way." His vehicle ultimately stopped at a service station across the road from the Red Rooster. Welte observed no oncoming northbound traffic on Rt. 1 when his vehicle was veering to the left, nor did he see any obstructions in the general area of the Red Rooster other than the Dean vehicle. He indicated that as he was swinging to the left and skidding, as far as he knew "the inside southbound lane and the two northbound lanes [were] clear of traffic." Welte said that "after [he] more or less got [his] car in full control, [he] looked over to the right and [he] seen tail lights sliding down the road and [he] seen him strike the other car and it went up on its side," indicating he was referring to the Redmiles vehicle. Welte was in the service station parking lot when he observed the Redmiles vehicle collide with the Dean car. The investigating officer said that the Welte vehicle laid down approximately 200 feet of skid marks while the Redmiles car left about 234 feet of skid marks. All of the Redmiles skid marks were in the "slow" lane of travel.

Welte originally told the police that he was traveling at a speed of 45 to 50 miles per hour and Redmiles, at 55 to 60 miles per hour. He later changed this to indicate that he was traveling at 50 to 55 miles per hour and that Redmiles was going 65 to 70 miles per hour. At trial he said that he could not "really say" what his speed was. His vehicle was equipped with power brakes.

## 2. *Our prior holdings relative to the boulevard law, speed, and statutory violations as evidence of negligence*

We shall first review our prior holdings relative to the boulevard law as well as our prior holdings concerning whether statutory violations, such as speeding, are evidence of negligence.

Maryland Code (1957, 1970 Repl. Vol.) Art. 66½, § 11-403 (b) states that "[t]he driver of a vehicle shall come to a full stop . . . at the entrance to a through highway and shall yield the right-of-way to other vehicles approaching on the through highway." Similar provisions are contained in § 11-403 (c) with reference to "obedience to a stop sign" and § 11-403 (d) relative to "a street or roadway on which a 'yield right-of-way' or 'yield' sign is erected facing the driver on the approach to an intersection or merging point with another street or roadway . . . ." In *Shriner v. Mullhausen,* 210 Md. 104, 122 A. 2d 570 (1956), and *Grue et al. v. Collins,* 237 Md. 150, 157, 205 A. 2d 260 (1964), among other cases, this Court has held that the language of Art. 66½, § 11-404 relative to entering a highway from a private road or driveway and entering a paved public highway from an unpaved public highway is to be accorded the same interpretation as that given § 11-403. We have also held that automatic traffic signals come within the boulevard rule and, therefore, the law with reference to them should be accorded an interpretation similar to that relative to the statute pertaining to boulevards and stop signs. *See, e.g., Clemons v. Bullock,* 250 Md. 586, 598, 244 A. 2d 240 (1968); *Thompson v. Terry,* 245 Md. 480, 486, 226 A. 2d 540 (1967); and *Eastern Contractors v. State,* 225 Md. 112, 123, 169 A. 2d 430 (1961).

Many persons regard the boulevard rule as having been originally announced in *Greenfeld v. Hook,* 177 Md. 116, 132, 8 A. 2d 888 (1939), where the Court said that the progenitor of the present § 11-403 was

"mandatory, that it is the positive and imperative duty of a person driving an automobile over an

unfavored highway, when he approaches an intersecting highway lawfully designated as a 'boulevard' or 'stop street,' to stop before entering the intersection, and having stopped, to exercise reasonable care and diligence to discover whether traffic thereon is approaching the intersection, and, having entered the intersection, to yield the right of way to such traffic, by permitting it to proceed without interruption, and that that duty persists throughout his passage across the favored way."

There are a number of cases, however, prior to *Greenfeld* which seem to embrace the rule. *See, e.g., Carlin v. Worthington,* 172 Md. 505, 192 A. 356 (1937); *Blinder v. Monaghan,* 171 Md. 77, 188 A. 31 (1936); *Motor Tours v. Becker,* 165 Md. 32, 166 A. 434 (1933); and *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194 (1932).

Cases reaching this Court arising under the boulevard rule fall into eight categories, the suit of the favored driver against the unfavored driver, the unfavored driver against the favored driver, the passenger of an unfavored driver against the favored driver, the passenger of an unfavored driver against both drivers, the passenger of the favored driver against both drivers, the passenger of the favored driver against the unfavored driver, the passenger of the favored driver against the favored driver, and, finally, counterclaims so that the favored and unfavored drivers are suing each other.

Representative of suits of the favored driver against the unfavored driver are *Schwier v. Gray,* 277 Md. 631, 357 A. 2d 100 (1976); *Pinchbeck v. Balto. Tank Lines, Inc.,* 258 Md. 211, 265 A. 2d 238 (1970); *Cornias v. Bradley,* 254 Md. 479, 255 A. 2d 431 (1969); *Racine v. Wheeler,* 245 Md. 139, 225 A. 2d 444 (1967); *Simco Sales v. Schweigman,* 237 Md. 180, 205 A. 2d 245 (1964); *Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526 (1964); *Dunnill v. Bloomberg,* 228 Md. 230, 179 A. 2d 371 (1962); *Shriner v. Mullhausen, supra,* 210 Md. 104; and *Carlin v. Worthington, supra,* 172 Md. 505.

The unfavored driver sued the favored driver in *Hensel v. Beckward,* 273 Md. 426, 330 A. 2d 196 (1974); *Creaser v. Owens,* 267 Md. 238, 297 A. 2d 235 (1972); *Nicholson v. Page,* 255 Md. 659, 259 A. 2d 319 (1969); *Trionfo v. Hellman,* 250 Md. 12, 241 A. 2d 554 (1968); *Hardy v. Sandler,* 245 Md. 621, 227 A. 2d 3 (1967); *Cooper v. Allen,* 243 Md. 9, 219 A. 2d 920 (1966); *Zeamer v. Reeves,* 225 Md. 526, 171 A. 2d 488 (1961); *Fowler v. DeFontes,* 211 Md. 568, 128 A. 2d 395 (1957); *Ness v. Males,* 201 Md. 235, 93 A. 2d 541 (1953); *State v. Gosnell,* 197 Md. 381, 79 A. 2d 530 (1951); and *Greenfeld v. Hook, supra,* 177 Md. 116.

As a result of counterclaims both the favored and unfavored drivers were involved in litigation in *Green v. Zile,* 225 Md. 339, 170 A. 2d 753 (1961), and *Davis v. Taylor,* 217 Md. 84, 141 A. 2d 706 (1958).

Cases in which passengers of an unfavored driver have sued the favored driver include *Slutter v. Homer,* 244 Md. 131, 223 A. 2d 141 (1966); *Schweigerath v. Berger,* 237 Md. 68, 205 A. 2d 290 (1964); *Zeamer v. Reeves, supra; State v. Marvil Package Co.,* 202 Md. 592, 98 A. 2d 94 (1953); and *Rinehart v. Risling,* 180 Md. 668, 26 A. 2d 411 (1942).

Passengers of an unfavored driver sued both drivers in *Savage v. Mills, Admr'x,* 237 Md. 204, 205 A. 2d 239 (1964); *Grue et al. v. Collins,* 237 Md. 150, 205 A. 2d 260 (1964); *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961); *Brooks v. Childress,* 198 Md. 1, 81 A. 2d 47 (1951); *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 49 A. 2d 537 (1946); *Madge v. Fabrizio,* 179 Md. 517, 20 A. 2d 172 (1941); and *Blinder v. Monaghan, supra,* 171 Md. 77.

Passengers of a favored driver sued the unfavored driver in *Quinn Freight Lines v. Woods,* 266 Md. 381, 292 A. 2d 669 (1972), and *Pegelow v. Johnson,* 177 Md. 345, 9 A. 2d 645 (1939).

Both drivers were sued by the passenger of the favored driver in *Kopitzki v. Boyd,* 277 Md. 491, 355 A. 2d 471 (1976); *Thompson v. Terry,* 245 Md. 480, 226 A. 2d 540 (1967); *McDonald v. Wolfe,* 226 Md. 198, 172 A. 2d 481 (1961); *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 121 A. 2d 188

(1956); *Baltimore Transit Co. v. O'Donovan*, 197 Md. 274, 78 A. 2d 647 (1951); *Motor Tours v. Becker, supra*, 165 Md. 32; and *Sun Cab Co. v. Faulkner, supra*, 163 Md. 477. The passenger prevailed in *Kopitzki*. In *Terry*, *McDonald*, *Baltimore Transit Co., Motor Tours*, and *Sun Cab Co. v. Faulkner*, the favored driver was absolved of liability. It is fair to say that in each of those latter instances this Court found that the negligence of the favored driver was not a proximate cause of the injury sustained even under the view we shall later express in this case. In *Sun Cab Company, Inc. v. Cusick* this Court referred to the boulevard rule in reversing a judgment entered against the favored driver in the trial court. There was testimony that he was "driving at an excessive speed" or at "a great rate of speed," although he claimed to have been driving at a speed of only 25 miles an hour. The Court said, however, that "it might, of course, be inferred from the length of the skid marks that he was driving more rapidly than that." It concluded:

> "In the case at bar the driver of the taxicab had the right to assume that a driver on McElderry Street would stop and yield the right of way to him. . . . Even though the cab may have been traveling at a rapid rate of speed, it was the gross negligence of Lewis, and not the cab's rate of speed, that was the proximate cause of the accident. It would be mere conjecture to say that the cab might not have been struck if its rate of speed had been different." *Id.* at 360.

The favored driver was sued by his passenger in *Yellow Cab Co. v. Bonds*, 245 Md. 86, 225 A. 2d 41 (1966); *White v. Yellow Cab Company*, 216 Md. 286, 140 A. 2d 285 (1957); and *Sun Cab Co., Inc. v. Hall*, 199 Md. 461, 86 A. 2d 914 (1952). The passenger prevailed in all of those cases other than *White*.

In no case, with the possible exception of *Sun Cab Company, Inc. v. Cusick, supra*, has the boulevard law been

held to bar recovery from a favored driver in a suit brought by his passenger. Even there, as we have pointed out, this can hardly be said to be a clear-cut holding that the boulevard law insulates the favored driver from liability to his passenger for his negligence. We have attempted in our citation of various types of suits arising under the boulevard rule to include most, if not all, of the cases reaching this Court. It will be seen that the vast preponderance of this litigation has concerned suits between favored and unfavored drivers. Accordingly, much of what has been said with reference to the boulevard rule must be placed in that context.

Certain principles emerge from those cases. The boulevard law is intended to expedite the flow of traffic on the boulevard. *Creaser v. Owens, supra,* 267 Md. 238, 246; *Brown v. Ellis, supra,* 236 Md. 487, 494-95; *Zeamer v. Reeves, supra,* 225 Md. 526, 532; *Harper v. Higgs, supra,* 225 Md. 24, 31; *Sun Cab Co., Inc. v. Hall, supra,* 199 Md. 461, 467; *Greenfeld v. Hook, supra,* 177 Md. 116, 125; and *Blinder v. Monaghan, supra,* 171 Md. 77, 83. The duty of an unfavored driver to stop and yield the right-of-way is mandatory, positive, and inflexible. *Creaser v. Owens, supra; Cornias v. Bradley, supra,* 254 Md. 479, 496-97; *Hardy v. Sandler, supra,* 245 Md. 621, 624; *Sun Cab Company, Inc. v. Cusick, supra,* 209 Md. 354, 359; *Greenfeld v. Hook, supra,* 177 Md. 116, 126; and *Blinder v. Monaghan, supra,* 171 Md. 77, 84. Accordingly, an unfavored driver violates this requirement at his own risk. Thus, unless the doctrine of last clear chance is involved, an unfavored driver's claim as a plaintiff is defeated by his failure to yield the right-of-way, since he is then guilty of contributory negligence as a matter of law. *Schwier v. Gray, supra,* 277 Md. 631, 634; *Kopitzki v. Boyd, supra,* 277 Md. 491, 495; *Hensel v. Beckward, supra,* 273 Md. 426, 431; *Creaser v. Owens, supra,* 267 Md. 238, 248; *Trionfo v. Hellman, supra,* 250 Md. 12, 18-19; *Hardy v. Sandler, supra,* 245 Md. 621, 625; *Slutter v. Homer, supra,* 244 Md. 131, 137; *Cooper v. Allen, supra,* 243 Md. 9, 14; *Shedlock v. Marshall,* 186 Md. 218, 235, 46 A. 2d 349 (1946); and *Greenfeld v. Hook, supra.* It follows that an unfavored driver as a de-

fendant in an action brought by a favored driver is liable, being guilty of negligence as a matter of law, in the absence of a showing of contributory negligence on the part of the plaintiff. *Schwier v. Gray, supra,* 277 Md. 631, 634; *Kopitzki v. Boyd, supra,* 277 Md. 491, 495; *Creaser v. Owens, supra,* 267 Md. 238, 248; *Pinchbeck v. Balto. Tank Lines, Inc., supra,* 258 Md. 211, 216, 217; *Racine v. Wheeler, supra,* 245 Md. 139, 146; *Brown v. Ellis, supra,* 236 Md. 487, 495; *Dunnill v. Bloomberg, supra,* 228 Md. 230, 235; and *Shedlock v. Marshall, supra,* 186 Md. 218, 235. A corollary of that holding must be that an unfavored driver is liable to his own passenger in the absence of circumstances such as those discussed and found in *Slutter v. Homer, supra,* 244 Md. 131, barring the claim of the passenger. A favored driver may assume that others will obey the law and he need not anticipate their violation of the law. *Creaser v. Owens, supra,* 267 Md. 238, 243; *Hardy v. Sandler, supra,* 245 Md. 621, 624; *Thompson v. Terry, supra,* 245 Md. 480, 487; *Schwiegerath v. Berger, supra,* 237 Md. 68, 70; *Dunnill v. Bloomberg, supra,* 228 Md. 230, 234; *McDonald v. Wolfe, supra,* 226 Md. 198, 203; *Zeamer v. Reeves, supra,* 225 Md. 526, 532; *Lilly v. State,* 212 Md. 436, 442, 129 A. 2d 839 (1957); *Fowler v. DeFontes, supra,* 211 Md. 568, 576; *Sun Cab Co., Inc. v. Hall, supra,* 199 Md. 461, 467; *Sonnenburg v. Monumental Tours,* 198 Md. 227, 234, 81 A. 2d 617 (1951); *Brooks v. Childress, supra,* 198 Md. 1, 7; *Baltimore Transit Co. v. O'Donovan, supra,* 197 Md. 274, 278; *Belle Isle Cab Co. v. Pruitt, supra,* 187 Md. 174, 180; and *Rinehart v. Risling, supra,* 180 Md. 668, 675. However, the favored driver may not proceed in complete disregard of obvious danger. *Racine v. Wheeler, supra,* 245 Md. 139, 145-46; *Brown v. Ellis, supra,* 236 Md. 487, 495; *Green v. Zile, supra,* 225 Md. 339, 345; and *State v. Marvil Package Co., supra,* 202 Md. 592, 599.

It follows from what we have said relative to contributory negligence as a defense to a favored driver's claim against an unfavored driver that the boulevard rule does not relieve the favored driver from the duty to observe that degree of ordinary care for his own safety which is imposed upon all men. From that it further follows that the boulevard rule

does not relieve the favored driver from the duty to use that degree of care for a passenger in his vehicle which one expects a normally prudent driver to exercise on behalf of his passenger. In *Fowler v. DeFontes, supra,* 211 Md. 568 at 574, our predecessors said,

> "Of course, although the favored driver has the right to assume that the unfavored driver will yield the right of way to him, that does not mean that the traveler on the favored highway has an absolute, unqualified, and complete right of way at all times and under all circumstances. This right of way is to be enjoyed with due regard to the circumstances then and there existing. *Carlin v. Worthington,* 172 Md. 505, 508, 192 A. 356; *Shedlock v. Marshall, supra,* 231,"

a statement that was repeated with a citation to *Fowler* in *Lilly v. State, supra,* 212 Md. 436, 442-43.

The boulevard law is not applicable to a vehicle making its exit from the boulevard. *Palmer v. Scheid,* 223 Md. 613, 616-17, 166 A. 2d 244 (1960), and *Safeway Trails, Inc. v. Smith,* 222 Md. 206, 212, 159 A. 2d 823 (1960). There are other factors which can remove a case from the boulevard rule. For instance, in *McCann v. Crum,* 231 Md. 65, 188 A. 2d 537 (1963), Judge Hammond said for the Court:

> "If the entering car has cleared the intersection and reached a point where it does not interfere with the favored driver's right of way through the intersection, the boulevard law ceases to be applicable. *Ness v. Males,* 201 Md. 235 [, 239-40, 93 A. 2d 541 (1953)]; *Shaneybrook v. Blizzard,* 209 Md. 304 [, 312-13, 121 A. 2d 218 (1956)]. *Cf. McDonald v. Wolfe,* 226 Md. 198 [, 172 A. 2d 481 (1961)]." *Id.* at 68.

To like effect *see Grue et al. v. Collins, supra,* 237 Md. 150, 157.

Our cases have referred to the fact that the relative rights of the parties at an intersection of a boulevard and an unfavored highway are not to be held to depend on nice calculations of speed, time or distance lest the purpose of the boulevard rule, to accelerate the flow of traffic over the through highway at the permitted speed, be thwarted.[2] *See, e.g., Brown v. Ellis, supra,* 236 Md. 487, 495-96; *Zeamer v. Reeves, supra,* 225 Md. 526, 532; *Harper v. Higgs, supra,* 225 Md. 24, 36; *Brooks v. Childress, supra,* 198 Md. 1, 11; and *Greenfeld v. Hook, supra,* 177 Md. 116, 126. Also, some of our boulevard cases contain statements such as that "[t]here was no sufficient evidence of excessive speed . . . to warrant the submission of that question to the jury." *See, e.g., Zeamer v. Reeves, supra,* 225 Md. 526, 533; *Davis v. Taylor, supra,* 217 Md. 84, 87; *Blinder v. Monaghan, supra,* 171 Md. 77, 83; *Motor Tours v. Becker, supra,* 165 Md. 32, 36; and *Sun Cab Co. v. Faulkner, supra,* 163 Md. 477, 480. The statement regarding nice calculations is true because it is only in a rare instance in our cases involving the boulevard law where it may fairly be said that the speed of the favored driver was a proximate cause of the accident in such manner that the question should be considered by the jury. In those instances where a suit has been brought by an unfavored driver against a favored driver the statements relative to "excessive speed" on the part of a favored driver and "nice calculations" in determining negligence are applicable because the failure of the unfavored driver to yield the right-of-way renders him guilty of contributory negligence as a matter of law in the absence of evidence bringing the last clear chance doctrine into play. This is well represented by *State v. Gosnell, supra,* 197 Md. 381, a case involving the

---

2. If this and similar language has sometimes been used less precisely than it should have been used, it must be remembered that "even Homer nods." Horace, DeArte Poetica, "I too am indignant when good Homer nods, but in a long work it is permitted to snatch a little sleep." Hence, the saying, "even Homer nods." B. Evans, Dictionary of Quotations 320.3 (1968).

claim of an unfavored driver against two favored drivers, where Judge Grason said for the Court:

"Assuming, without deciding, that the testimony warrants a finding that the appellees' cars were traveling at an unlawful rate of speed, and were racing, nevertheless, Frizzell was without right to violate the law in traveling across the boulevard." *Id.* at 390.

To similar effect *see Shriner v. Mullhausen, supra,* 210 Md. 104, 118.

The matter of "nice calculations of speed, time or distance" was put in a slightly different manner in *Goosman v. A. Duie Pyle, Inc.,* 206 F. Supp. 120 (D. Md. 1962), *rev'd on other grounds,* 320 F. 2d 45 (4th Cir. 1963), quoted by Judge Singley for the Court in *Kopitzki v. Boyd, supra,* 277 Md. at 497. Judge Northrop said in *Goosman*:

"The prohibition against making *nice calculations* does not prevent a jury and judge from making *all calculations of every nature;* the prohibition pertains only to those close, hair-splitting calculations which cannot be expected of a reasonably prudent favored driver when immediately confronted by an intrusion upon his right of way. Where the times and distances are great, the calculations are no longer 'nice,' and the prohibition is inapplicable." *Id.* at 127. (Emphasis in original.)

In a case involving the claim of the passenger of an unfavored driver against the favored driver or the claim of a passenger of a favored driver against the favored driver, the fact that the favored driver is violating the speed law does not become a jury question unless the evidence is sufficient to warrant a conclusion that the violation is a proximate

cause of the injury concerning which complaint is made. *See*, for instance, *Nicholson v. Page, supra,* 255 Md. 659, 664, where Judge Barnes said for the Court, "The defendant correctly observes that the 'mere violation of a statute will not support an action for damages, unless there is legally sufficient evidence to show the violation was a proximate cause of the injury complained of,' citing our decision to that effect in *Fowler v. Smith,* 240 Md. 240, 248, 213 A. 2d 549, 555 (1965)." In *Ford v. Bradford,* 213 Md. 534, 541, 132 A. 2d 488 (1957), Judge Prescott said for the Court, "It has been held by the Court on many occasions that the violation of a statutory regulation is evidence of negligence, and if such violation causes or contributes to the injuries complained of it constitutes negligence. *Miles v. Webb,* 162 Md. 269, 272, 159 A. 782 [(1932)]." The Court went on in *Ford* to hold whether an individual had "failed to comply with [a] statute and whether this failure caused or contributed to the [plaintiff's] damages presented jury questions." *Norris v. Wolfensberger,* 248 Md. 635, 237 A. 2d 757 (1968), concerned an accident in which a motorist was said to have violated a statute requiring that a left-hand turn be made from the extreme left-hand lane. Judge Horney there said for the Court:

> "As the turning motorist in this case was not in the extreme left-hand lane within the meaning of § 225 (e), the trial court should not have ruled as a matter of law that she was free of negligence.[3] On the other hand that does not mean that the court should have granted a directed verdict against the turning motorist for having been contributorily negligent. It is clear that the passing motorist was one of the category of persons whom the statute was intended to protect and that the accident was of the nature of those the statute is intended to prevent. Nevertheless the happening of the accident did not, since the violation of a rule of the road is not negligence *per se,* compel a finding of an irrebuttable presumption of negligence or even

negligence, *Kelly v. Huber Baking Company*,[4] 145 Md. 321, 125 Atl. 782 (1924), though it may, if the violation was the proximate cause of the accident, create a *prima facie* case of negligence and put the burden on the other party of showing that he was justified in violating the rule. *Miller v. Mullenix*, 227 Md. 229, 176 A. 2d 203 (1961). And see *Liberto v. Holfeldt*, 221 Md. 62, 65, 155 A. 2d 698, 700 (1959). Ordinarily therefore the questions of negligence and proximate cause would be for the jury to decide."

"3. In some cases it may be a jury question as to whether a motorist was in the *extreme* left-hand lane just as it is often a jury question as to whether a motorist kept as *close as practical* to the curb or edge of the roadway. See Feinglos v. Weiner, 181 Md. 38; Mauchle v. Panama-Pacific International Exposition Co., 174 Pac. 400 (Cal.); McGregor v. Weinstein, 225 Pac. 615 (Mont.); Wines v. Goodyear Tire and Rubber Co., 246 S.W.2d 525 (Mo.)."

"4. In Kelly v. Huber Baking Co., 145 Md. 321, the Court (quoting a part of Chapter 297 of Huddy on Automobiles) said at p. 335 that '[t]he distinction between mere "evidence of negligence" and "negligence *per se*" is very marked, in that in the former there must be an adjudication as to whether or not the violation constitutes negligence, whereas in the latter negligence necessarily follows the proof of the violation * * *. The rule is different in some jurisdictions where the regulation involved relates to the so-called "law of the road". Driving on the wrong side of the road is not so clearly a wrongful act as driving at a prohibited speed, for the circumstances may be such as to excuse a violation of the law of the road. Hence the violation is generally said to be *prima facie* negligence, and the violator of the rule is given an opportunity to rebut the inference of negligence arising against him.' " *Id.* at 640-41. (Emphasis in original.)

The first of the cases we have cited in which a passenger of a favored driver was permitted to recover from the favored driver is *Sun Cab Co., Inc. v. Hall, supra*, 199 Md. 461. There the passenger recovered a judgment which was affirmed by this Court on appeal. The boulevard law was held applicable. The question before the Court was: "whether, considering the testimony most favorable to the plaintiffs, there was any evidence of primary negligence on the part of the cab driver, or whether there was any basis

for the application of the doctrine of last clear chance." The Court said:

> "It is earnestly contended by the appellant that the cab driver had the right to assume that the automobile was not going to violate the law, that his inattention, if any, was not negligence under the circumstances, and that when he first became aware that the other vehicle was coming into the intersection, it was too late for him to stop." *Id.* at 464.

It pointed out that of the number of cases involving "the relative duties of vehicles at a boulevard intersection," in only one, *Baltimore Transit Co. v. O'Donovan, supra,* 197 Md. 274, "was the plaintiff a passenger in the vehicle on the favored highway." Chief Judge Marbury further said for the Court:

> "Appellant urges that speed is not negligence in a favored driver, and is irrelevant in determining the respective rights between favored and unfavored drivers, citing *Brooks v. Childress, supra* and *Sonnenburg v. Monumental Motor Tours, supra.* In *Brooks v. Childress,* [198 Md. 1, 7], we said there was no evidence that the Childress tractor-trailer was exceeding the speed limit, and the driver 'had no reason to believe that Wesley would disregard the boulevard law and pull out in the road in front of him.' In *Sonnenburg v. Monumental Motor Tours,* [198 Md. 227, 234], we said: 'The driver of a taxicab or any other driver is not under a duty to anticipate, *in the absence of evidence,* that other drivers will often — or ever — cross negligently in violation of the boulevard law.' (Emphasis supplied.) And, further on, discussing *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888, 136 A.L.R. 1485, one

of the earliest cases, we said: 'And in other passages in that opinion the court recognized that the driver on the favored highway does not have an absolute right to proceed under all circumstances.' Neither of these cases holds that a driver on a favored highway can proceed without regard to the possibility of some other driver usurping his right of way.

"Boulevards are posted for the purpose of accelerating traffic, but they are not constituted speedways for reckless drivers who do not watch what is going on. It is true that the driver on a boulevard is not obliged to anticipate that someone will negligently come into his path, but he is not excused from liability to his passengers if someone does come in, and he fails to avoid a collision because he did not look in time to see what was inevitable. There is testimony in the case before us, as we have said, which would permit the jury to find that had the cab driver been looking, he could have seen the other car entering the intersection, and he could have seen this when he was far enough away to have avoided the accident, unlike the O'Donovan case, where there was no such evidence. We do not alter or change or destroy the effect of our previous decisions on the boulevard law when we hold that there was sufficient evidence in this case of the negligence of the cab driver to go to the jury." *Id.* at 466-67.

The second such case was *Yellow Cab Co. v. Bonds, supra,* 245 Md. 86. There a taxicab collided with a vehicle in front of it on a boulevard. That vehicle had been braked suddenly to avoid collision with another car which had failed to stop or yield the right-of-way at an intersection with that boulevard. Suit was by a passenger in the cab. As Judge Horney put it for the Court, "[T]he question on appeal [was] whether the cabdriver was guilty of negligence which was

also a proximate cause of the accident." In holding that he was, the Court said:

"That there can be more than one proximate cause of an accident is clearly established. While the negligence of the cabdriver must have been *a proximate cause* in order to warrant recovery by the passenger, it did not necessarily have to be the sole proximate cause of the accident. The negligence of the operator of the intruding automobile did not excuse the cab owner and driver from liability for damages. It was enough that the negligence of the cabdriver, in concurrence with that of the other motorist, proximately caused or contributed to the injuries the passenger sustained. *Yellow Cab Co. v. Hicks*, 224 Md. 563, 168 A. 2d 501 (1961); *Armiger v. Baltimore Transit Co.*, 173 Md. 416, 196 Atl. 111 (1938); *Brawner v. Hooper*, 151 Md. 579, 135 Atl. 420 (1926). Other cases are collected in 3 M.L.E., *Automobiles*, § 162.

"The argument of the appellants is that the boulevard law relieved them from liability because the operator of the cab was the favored driver, but this fact did not relieve the cabdriver of the obligation to use due care under the circumstances of this case. *Harper v. Higgs*, 225 Md. 24, 169 A. 2d 661 (1961); *Belle Isle Cab Co. v. Pruitt*, 187 Md. 174, 49 A. 2d 537 (1946). Nor did the fact that a concurrent tort-feasor violated the boulevard law affect the claim of the appellee against the appellants.

"Rather, since the accident was the result of concurrent contributing causes, and there is evidence that the cabdriver was not as alert as he should have been, the case, besides involving a violation of the boulevard law, also involves a violation of § 224(a) of Article 66½ of the Code (1957) providing that:

'The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.'

A driver, charged with keeping these factors in mind, is obliged to act reasonably and prudently, *Sieland v. Gallo*, 194 Md. 282, 71 A. 2d 45 (1950), and whether or not he did so is generally a question of fact for the jury to determine. *Christman v. Weil*, 196 Md. 207, 76 A. 2d 144 (1950)." *Id.* at 90-91. (Emphasis in original.)

Although the defendant favored driver in each of those cases was a taxi operator and it might be argued that his contract for safe carriage of his passenger placed upon him a higher duty of care than an ordinary driver, the Court appeared in no way to rest its decision on that fact. No common carrier was involved, however, in *Kopitzki v. Boyd, supra*, 277 Md. 491, decided by this Court after the decision below in the Court of Special Appeals. We did not conceive of *Kopitzki* as enunciating any new law. As Judge Singley put it for the Court in *Kopitzki*, "The question presented [in it was] whether a driver on a favored boulevard involved in a collision with a driver on an unfavored road who fails to yield the right-of-way is entitled to the protection of the boulevard law in a negligence action filed against him by his passenger."

We heard *Kopitzki* prior to its consideration by the Court of Special Appeals. The favored driver there contended that the trial court erred in not directing a verdict in his favor against his passenger, saying that the boulevard law was plainly applicable, and that, notwithstanding evidence of speeding and drinking on his part, the sole proximate cause of the accident was the failure of the unfavored driver to yield the right-of-way to him as the driver on the favored

boulevard. There was testimony from a driver in the left-hand lane of the boulevard that the defendant favored driver passed him at a speed of 70 to 80 miles per hour at a point approximately 150 to 200 feet from the vehicle of the unfavored driver at the moment it began to move onto the highway.

Judge Singley fully reviewed for the Court our prior boulevard cases. He quoted from J. Webb, *Bothersome Boulevards*, 26 Md. L. Rev. 111, 125 (1966), in which it was said:

> "There is, therefore, no justification for further extension of the privilege of the favored driver into situations where he has originally been driving unlawfully or carelessly. Ordinarily, in most boulevard cases it is not material what the favored driver was doing. The accident would never have happened if the unfavored vehicle had yielded right of way, and the conduct of the unfavored driver is the sole proximate cause of the accident. But if it can be shown that the favored driver could have avoided the accident if he had been operating lawfully and with due care, then the negligence of the favored driver should be an issue for the jury. On the few recent decisions involving the negligence of the favored driver cited above, it can be argued that this is the present trend."

It was observed in *Kopitzki* that "this prediction ha[d] acquired additional support" with citations to *Pinchbeck v. Balto. Tank Lines, Inc.*, *supra*, 258 Md. 211; *Cornias v. Bradley*, *supra*, 254 Md. 479, and *Racine v. Wheeler*, *supra*, 245 Md. 139.

In *Kopitzki* it was pointed out that the other driver on the favored highway, "who admitted that he too was exceeding the speed limit at the time, was able to avoid striking (the entering vehicle), without jamming on his brakes." The Court concluded that "[t]he jury could have found that it was Kopitzki's inattention that was a proximate cause of the

accident. This was negligent conduct which would support [the passenger's] claim against Kopitzki, and [she] was entitled to have the jury consider it," citing *Brown v. Ellis, supra,* 236 Md. at 495. There Judge Prescott, in discussing contributory negligence, said for the Court:

"Appellant contends that he is within the boulevard rule on this issue as a matter of law. There can be little doubt that the decisions of this Court have jealously guarded and upheld the favored driver's right of way in boulevard cases. In fact, the Maryland decisions seem to go as far as any of our sister States in upholding such rights of way. However, no decision of this Court has ever stated that such a favored driver has a complete and absolute right of way which relieves him of all duty to exercise reasonable and ordinary care for his own safety. On the contrary, this Court, as early as 1939, stated in *Greenfeld v. Hook,* 177 Md. 116 [, 8 A. 2d 888 (1939),] that 'the traveller on the favored highway [does not have] an absolute, unqualified, and complete right of way, at all times and under all circumstances, over persons who have lawfully entered the street, nor [can he] proceed thereon in blind indifference to the danger to which his progress may expose others,' but, 'where a traveller on a favored highway knows or should know that his progress will endanger a traveller entering the same from a restricted highway, he must exercise reasonable care to avoid injuring him.' See also *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174 [, 49 A. 2d 537 (1946)]; *Shedlock v. Marshall,* [186 Md. 218, 46 A. 2d 349 (1946)]; *Fowler v. DeFontes,* 211 Md. 568 [, 128 A. 2d 395 (1957)]; 4 Md. L. Rev. 207, 213 [(1940)]." *Id.* 236 Md. at 495.

### 3. *The negligence of Redmiles*

In reviewing this case to determine whether the plaintiffs adduced legally sufficient evidence to warrant the jury's

consideration of the negligence of Redmiles, we are obliged to consider the evidence and all logical and reasonable inferences deducible therefrom in the light most favorable to the plaintiffs. *Schwier v. Gray, supra,* 277 Md. 631, 636; *Moran v. Fabergé,* 273 Md. 538, 540, 332 A. 2d 11 (1975); and *Baltimore & O.R.R. v. Plews,* 262 Md. 442, 449, 278 A. 2d 287 (1971). So reviewing the evidence, we note that Redmiles came over the crest of the hill "more or less beside [Welte], maybe a little in front or a little behind [him]," that Welte evaded the Dean car, and that all of the Redmiles skid marks were in the slow lane of travel.[3] There was evidence that Welte told the police that he was traveling at 50 to 55 miles per hour in this 50 mile zone and also that Redmiles was going 65 to 70 miles per hour.

There are a number of similarities between the factual situation here and that in *Kopitzki.* (1) In each case the suit is by the passenger of the favored vehicle against the favored and unfavored drivers. (2) Each case deals with an appeal by the favored driver from a denial of his motion for a directed verdict as to his liability to the passenger based upon a claimed lack of legally sufficient evidence to raise a

---

3. As we have observed, there was testimony that the time the Dean vehicle was stopped in the boulevard prior to the collision "might have been a minute, maybe a little longer." There would be a point in time when the boulevard law would not be applicable to the Dean vehicle, as Judge Hammond pointed out for the Court in the portion we have already cited from McCann v. Crum, *supra,* 231 Md. 65, 68. Had the vehicle of Dean been sitting in the highway for an appreciable period of time, the boulevard law would in no way be applicable and the issues would be similar to those presented in Harper v. Higgs, *supra,* 225 Md. 24, where an unfavored car stalled in crossing a boulevard and was struck by the favored driver, and Marshall v. Sellers, 188 Md. 508, 53 A. 2d 5 (1947), where a truck was parked with its left wheels on the right side of the road without displaying any lights, flares or warning signal of any kind. Viewed in the light most favorable to the plaintiffs, the evidence here was sufficient for a finding of fact by the jury under which the boulevard law would not be applicable, the Dean vehicle having been in the highway a sufficiently long time to take it out of the operation of the boulevard law, a conclusion clearly within the trial court's instructions. Although an exception was taken to the trial judge's instruction on this point, the Redmiles estate on appeal has abandoned the point, directing its arguments to other issues and other grounds. Therefore, we do not rest our determination that there was legally sufficient evidence of Redmiles' negligence to go to the jury upon that ground.

jury issue as to the negligence of the favored driver. (3) There was evidence of excessive speed on the part of the favored driver in each instance. (4) There was evidence in each case that another vehicle nearly abreast of the favored driver was able to avoid striking the unfavored vehicle even though traveling at a rate of speed above the speed limit. (5) In *Kopitzki* the driver of the vehicle avoiding the accident first noticed the unfavored vehicle at a distance of 150-200 feet. In this case Welte noticed the Dean vehicle as he cleared the crest of the hill, 400 feet from the scene of the accident.

As we have heretofore pointed out, a violation of a statute does not in and of itself support an action for damages. The Court said in *Ford v. Bradford, supra,* 213 Md. 534, 541, "It has been held by the Court on many occasions that the violation of a statutory regulation is evidence of negligence, and if such violation causes or contributes to the injuries complained of it constitutes negligence." Accordingly, if reasonable minds would differ as to whether "such violation causes or contributes to the injuries complained of," a jury question would be presented. Therefore, we hold that in an action against a favored driver by his passenger and in the action of the passenger of an unfavored driver against the favored driver if the evidence before the court is sufficient to support a conclusion that the speed of the favored driver was a proximate cause of the accident, then this becomes a jury question.[4] The favored driver here was not excused by the boulevard rule from his duty of exercising due care for his

4. Of course, there may be cases in which the passenger is "barred from recovery because of the negligence of [the unfavored driver], whether that holding is based on the law of agency or on the controversial doctrine of imputed negligence." *See* Slutter v. Homer, *supra,* 244 Md. at 140. In such a case the speed of the favored driver would not be a jury issue.

Our holding here is consistent with the changes which have been made in the motor vehicle code. It should be borne in mind that while Code (1957) Art. 66½, § 2 (a) (45) defined "right of way" as "[t]he privilege of the immediate use of the highway," Code (1957, 1970 Repl. Vol.) Art. 66½, § 1-175 now says this term "means the right of one vehicle . . . to proceed in a *lawful manner* on a highway in preference to another vehicle . . . ." (Emphasis added.) The change was accomplished when the motor vehicle code was completely revised by Chapter 534 of the Acts of 1970. The report of the Warnken Committee to Study Revision of the Motor Vehicle Laws

162

passenger. Reasoning minds could differ here as to whether the conduct of the favored driver was a proximate cause of the accident. Hence, there was a jury question properly presented. We do not conceive our holding here to be contrary to our prior cases. To the extent, however, that any language in any of our prior cases is subject to a contrary interpretation, those cases are overruled.

### 4. *The instructions*

If the trial court erred in its instructions to the jury as contended by the Redmiles estate, then it would be necessary to remand the case for a new trial. Given the conclusion of the Court of Special Appeals that there was no evidence of negligence on the part of Redmiles, it quite properly did not address itself to those alleged errors. We now consider them in lieu of remanding the case to the Court of Special Appeals for its consideration of the instructions.

In reviewing jury instructions we obey the admonition by Judge Digges for the Court last year in *Schwier v. Gray, supra:*

"It is well settled in Maryland that when considering the adequacy of jury instructions we

---

(iv) (1968) states relative to its proposed subtitle I that "[f]ew substantial changes were made, except as necessary for clarity or to implement substantive changes made in other subtitles." Its proposed § 1-173 is identical with present § 1-175. Additional legislative history is derived from the Legislative Council Report to the General Assembly of 1970 where the Special Committee to Revise the Motor Vehicle Laws appointed by the Judiciary Committee of the Legislative Council said:

"MAJOR RECOMMENDATIONS AND EXCEPTIONS

SUBTITLE I — Words and Phrases Defined

"Subtitle I is the definitions section of the revised code and, in general, no major changes were made here except that the Warnken Commission recommendations have expanded this area to include various terms which were not in the existing code.

"Essentially, the committee agreed generally with the significant expansion of the number of definitions to implement and accommodate the changes contemplated by the Warnken recommendations in the State Motor Vehicle Code." *Id.* at 908.

will consider the charge as a whole and will not select out words, phrases or sentences which might, of themselves and out of context, appear to be misleading or inartful. *Clayborne v. Mueller,* 266 Md. 30, 40-41, 291 A. 2d 443 (1972); *Jones v. Federal Paper Bd. Co.,* 252 Md. 475, 484-85, 250 A. 2d 653 (1969)." *Id.* at 277 Md. 637.

In *Atran v. Furness,* 251 Md. 216, 224, 246 A. 2d 767 (1968), citing *Wilhelm v. State Traffic Comm.,* 230 Md. 91, 185 A. 2d 715 (1962), we said simply that the charge must be considered as a whole.

## A.

In his instructions to the jury the trial judge quoted from Code (1957, 1970 Repl. Vol.) Art. 66½, § 11-801 (d) using the title of the subheading as "Decrease of Speed on Certain Parts of the Highway." That which actually appears in the Code is *"Drivers to reduce speed in certain circumstances."* Neither heading appears in Chapter 534 of the Acts of 1970 which adopted this particular provision of the Code. Be that as it may, the section reads:

"The driver of every vehicle, consistent with the requirements of subsection (a), shall drive at an appropriate, reduced speed when approaching and crossing an intersection (other than an intersection at which cross traffic is required by an official traffic-control device to stop) or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

He further instructed the jury that it "m[ight] also consider in determining whether there was negligence on the part of

Mr. Redmiles that he was required, under the law, to slow his automobile when cresting the hill, as [the trial judge had] read to [the jury] a bit earlier, and [the jury] m[ight] look to Mr. Welte's testimony to determine — that is, if [the jury] believe[d] Mr. Welte's testimony concerning this aspect of the case, whether or not he did — that is, Mr. Redmiles, did in fact slow down as he was cresting or about to crest the hill."

The Redmiles estate contends:

> "These portions of the charge imposed a duty upon Redmiles which is not required of him by the law and which, if upheld, severely impairs the rights of the favored driver. The law is clear that a favored driver need not slow or bring his car under control when approaching an intersection on a boulevard. Does it not follow from that that he need not slow or bring his car under control when approaching a hill crest?"

The estate attempts to read into the statute something which is not there. The statute specifically provides that the requirement to reduce speed "when approaching and crossing an intersection" is not applicable where "cross traffic is required by an official traffic-control device to stop . . . ." No similar provision is written into the statute concerning the requirement as to "approaching a hill crest . . . ." The provisions of the statute relative to approaching railway grade crossings, curves, and crests of hills and as to when special hazards exist "by reason of weather or highway conditions" apply to situations where the operator is not permitted to make the assumption granted to him in the case of boulevard intersections that no hazard will exist. Most of these provisions deal with obstructions to vision. The favored driver may not assume that the road will be clear in a dense fog, in a blinding rain, beyond a curve, or beyond the crest of a hill. He may not properly assume the absence of an accident just ahead of him, the presence of

which is obscured from his vision. Instances have been known of foreign objects which have fallen off of other vehicles on the highway. The law is made to apply to the state as a whole. In areas where highways are not fenced, as are some of the superhighways, one may not assume that an animal has not strayed upon the road. In some places in some circumstances a tree might even have fallen across the highway. There was no error in this portion of the charge in the light of the testimony as to the speed of the Redmiles vehicle.

### B.

The trial judge in his charge indicated that with the permission of counsel he did not refer to or give "the numerical citations" to the motor vehicle law but "just . . . read to [the jury] the fundamental law." He stated that "[r]easonable and prudent speed is one of the subtitles." He then quoted the statute as saying, "No person shall drive a vehicle on a highway at a greater speed than is reasonable and prudent under the circumstances then existing," apparently referring to Code (1957, 1970 Repl. Vol.) Art. $66^{1}/_{2}$, § 11-801 (a) which states:

> "(a) *Reasonable and prudent speed.* — No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards existing. In every event speed shall be controlled as necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

He later said to the jury:

> "In considering negligence on the part of Mr. Redmiles you may consider these factors, that is, if

you believe the testimony of Mr. Welte that Mr. Redmiles was proceeding at 65 to 70 miles per hour in a 50-mile zone, that that was excessive speed. Now, bear in mind that Mr. Welte gave two versions of his speed and the speed of Mr. Redmiles. So, the first officer, Corporal Wolfe, said that he was going — he, Mr. Welte, was going about 45 to 50 and that Mr. Redmiles was exceeding that, and I don't recall the exact figure. But on the second time he spoke to the officer, and that is when he spoke to Officer Faries, he indicated that he, Mr. Welte, was going in excess of the speed limit and that the decedent driver of this case, Redmiles, was going at a speed of 65 or 70 miles an hour."

In response to the exceptions noted by counsel for the Redmiles estate, the court further instructed the jury:

"Ladies and gentlemen, I have one addition to the instructions I gave you. As you recall, I read to you no person shall drive a vehicle on a highway at a greater speed than is reasonable and prudent under the conditions then existing.

"Where no special hazard exists, the following speeds shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent.

"And no motor vehicle shall be operated upon any highway of the state at a rate of speed greater than 50 miles per hour on highways outside of municipalities. Of course, that does not include dual highways, because this highway that is discussed in these proceedings is not a dual highway. So, a 55-mile speed limit would not apply to that. The testimony and the law would indicate 50 miles is the limit on that highway."

Relative to this the Redmiles estate says:

"That the court should so instruct the jury is astounding in view of the fact that this court has never permitted a jury to find a favored driver guilty of negligence which was a proximate cause of the accident on the basis that his speed was excessive."

In *Miller v. Graff*, 196 Md. 609, 78 A. 2d 220 (1951), Judge Delaplaine observed for the Court:

"It is true that excessive speed of an automobile may not of itself be the proximate cause of an accident, but in some circumstances it may constitute negligence, if it directly contributes to the accident. *Ottenheimer v. Molohan*, 146 Md. 175, 184, 126 A. 97 [(1924)]; *Sun Cab Co. v. Faulkner*, 163 Md. 477, 163 A. 194 [(1932)]; *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, 27, 190 A. 768 [(1937)]; *Bozman v. State, for Use of Cronhardt*, 177 Md. 151, 154, 9 A. 2d 60 [(1939)]. Moreover, it is a criminal offense for any person to operate a motor vehicle over any public highway of the State recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger the property and life or limb of any person. Code Supp. 1947, art. 66½, § 156." *Id.* at 618.

*See also* our earlier discussion of speed as a possible proximate cause of an accident.

Considering the charge as a whole, we find no error.

## C.

Appellee objects to the court's instruction:

"You are further instructed that every driver upon a highway may not proceed blindly on a given course, but is required to keep a proper lookout for obstacles, pedestrians or vehicles in his path and is required to keep his motor vehicle under control so as to avoid colliding with objects, pedestrians or vehicles on the highway."

He says that his earlier "summary of the rights and duties of the favored driver . . . makes it obvious that this instruction was incorrect. Were it correct, the boulevard law would have no meaning whatsoever. Moreover, this portion of the charge told the jury that if Redmiles collided with Dean he was necessarily negligent because it followed from the fact of the collision that Redmiles did not have his car in control."

We have already pointed out that the fact that an individual is a favored driver does not insulate him from liability to his passengers for his negligence. *Schwier, Pinchbeck,* and *Racine* all hold that the contributory negligence of a favored driver may bar him from recovery from an unfavored driver. In speaking of contributory negligence this Court has said that one who either did not look when he should have looked or who did not see when he did look is guilty of contributory negligence as a matter of law. *Henderson v. Brown,* 214 Md. 463, 472, 135 A. 2d 881 (1957). We have further said that contributory negligence is neglect of the duty imposed upon all men to observe ordinary care for their own safety, the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances. *Potts v. Armour & Co.,* 183 Md. 483, 490, 39 A. 2d 552 (1944). If the failure of an individual to use his God given faculties for the preservation of his own safety is such negligence as will bar him from recovery in a suit brought by him, it certainly follows that

such failure if found to be a proximate cause of an accident is such negligence as would permit recovery from a favored driver by his passenger to whom he owed a duty of due care.

Considering the instructions as a whole, we find no error in this instruction.

D.

Appellee suggests:

> "Time does not permit listing, illustrating, etc., the other errors of the lower court in its charge, e.g., not directing a verdict against Dean ..., giving instructions unduly favorable to him ..., by not instructing the jury that there was no legally sufficient evidence of inattention or due care on the part of Redmiles, giving an instruction prejudicial to appellant (if the Dean car was stalled, 'then Mr. Redmiles was not privileged to come and collide into his automobile.')
>
> "Suffice it to say and to submit that the charge of the court to the jury was so replete with errors and omissions that appellee did not have a fair trial. Indeed, the errors and omissions were so numerous and basic that a jury verdict against appellee was inevitable."

The complaints that a verdict should have been directed against Dean and that instructions given were unduly favorable to him are without merit since if there were error it was cured by the jury's verdict against Dean. We have already dealt with the remaining two contentions in the first paragraph by our previous discussion. Any claims relative to any other errors intended to be covered by the second paragraph and not specifically set forth in the brief are met by the statement of our predecessors in *State Roads Comm. v. Halle,* 228 Md. 24, 178 A. 2d 319 (1962):

> "Surely it is not incumbent upon this Court, merely because a point is mentioned as being objectionable

at some point in a party's brief, to scan the entire record and ascertain if there be any ground, or grounds, to sustain the objectionable feature suggested." *Id.* at 32.

Considering the charge as a whole, we find no error. Thus, the judgments must be reinstated.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court for passage of an order affirming the judgments of the Circuit Court for Prince George's County; appellees to pay the costs.*

*Murphy, C. J., dissenting:*

The Court holds in this case that in an action by a passenger against a favored driver "if the evidence before the Court is sufficient to support a conclusion that the speed of the favored driver was a proximate cause of the accident, then this becomes a jury question." The Court concludes that the evidence that Redmiles was exceeding the posted speed limit by 20 miles per hour was evidence of negligence from which, without more, a jury could properly conclude that such excessive speed was a contributing cause of the accident. Most respectfully, I dissent.

I agree, of course, that the boulevard law does not relieve the favored driver from the duty to observe that degree of ordinary care for his own safety, and that of his passenger, which one expects of a normally prudent driver under the circumstances. In other words, it is well settled that the boulevard law does not insulate a favored driver from liability to his passenger for his negligence which constitutes a proximate cause of an accident. Last year the Court, in *Kopitzki v. Boyd*, 277 Md. 491, 495, 355 A. 2d 471, reaffirmed the well-established rule of our cases that "while the

excessive speed of the favored driver will not ordinarily be considered a cause contributing to the accident, . . . if there is evidence from which a jury could find that the favored driver was inattentive, and that but for his inattention the accident could have been avoided, the favored driver's negligence becomes a jury issue . . . ." The "inattention" doctrine applicable to favored drivers in boulevard cases has always recognized that the evidence of inattention or lack of due care, to be legally sufficient to constitute a proximate cause of an accident, must not be based on "nice calculations of speed, time or distance." *Brown v. Ellis*, 236 Md. 487, 495, 204 A. 2d 526 (1964); *Harper v. Higgs*, 225 Md. 24, 36, 169 A. 2d 661 (1961). That the Court does not premise its holding in this case upon the inattention doctrine is plain; manifestly, to have done so on the evidence adduced at the trial would have been to accord to that doctrine new heights and different dimensions, spelling the demise of the favored status of the driver on the boulevard.

What the Court does today is change or abandon the long-standing rule that excessive speed will *ordinarily* not be considered a proximate cause of an accident in boulevard cases. Since the only evidence of Redmiles' negligence is that of excessive speed, and there are no circumstances associated with it making it anything more than an ordinary, garden variety case of excessive speed, the rule fashioned by the majority is that, in the most ordinary case, excessive speed can constitute a contributing cause of an accident sufficient in itself to carry a case to the jury as against the favored driver. To so hold is to scrap the eminently sensible rule that nice calculations of speed, time or distance will not be considered in boulevard cases in assessing the proximate cause of an accident. That virtually all cases involving evidence of excessive speed on the part of the favored driver, regardless of circumstances, will become jury questions is the practical result of the Court's decision, a consequence which I deem both unwise and unfortunate.

I think Judge Moore's opinion for the Court of Special Appeals in this case was correct and I would affirm the judgment.