McDONALD *v.* WOLFE ET VIR AND CUSTER

[No. 315, September Term, 1960.]

*Decided July 11, 1961.*

*Motion for rehearing filed August 9, 1961, denied September 13, 1961, and opinion corrected as to place of suit.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*William O. Doub,* with whom were *J. Kemp Bartlett, III,* and *Bartlett, Poe & Clagett* on the brief, for appellant.

*Leonard A. Orman* for Pauline J. Wolfe et vir, part of appellees.

*Frederick J. Green, Jr.,* with whom were *Alva P. Weaver, III,* and *Lord, Whip, Coughlan & Green* on the brief, for Donald Wayne Custer, the other appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by one of two defendants from judgments in favor of the plaintiffs against the appellant and the other defendant for damages growing out of an automobile collision. The case turns upon whether or not under the so-called boulevard rule the appellant McDonald, a defendant below, was entitled to a directed verdict or to a judgment n.o.v. in his favor.

This suit arose out of a head-on collision of two automo-

biles on Walker Mill Road, near its intersection with County Road, in Prince George's County, which occurred at about 2:35 P. M. on October 14, 1959. The weather was wet and drizzling, but visibility was good. One of the plaintiffs, Pauline J. Wolfe, was a passenger in an automobile owned and operated by the appellant—defendant, Charles R. McDonald. The other plaintiff is her husband, Donovan J. Wolfe, a nephew of McDonald. Mrs. Wolfe was sitting beside Mr. McDonald in the front seat, and Mrs. McDonald was sitting in the rear seat of the McDonald car. The other car was owned and operated by Donald Wayne Custer, the other defendant below and and an appellee here.

The McDonald car was proceeding generally southward on Walker Mill Road, which curves somewhat to the southeast at its intersection or junction with County Road. This intersection is not at right angles; County Road runs perhaps a little west of south from Walker Mill Road, so that the junction forms a Y, with the bottom of the Y to the north of the intersection, the right fork (facing south) being County Road which seems to be fairly straight for two hundred feet or more, and the left fork being the continuation of Walker Mill Road which curves to the left. Walker Mill Road is a boulevard, and is protected against traffic entering from County Road by a double stop sign, located perhaps thirty feet from the westerly side of the paved portion of Walker Mill Road. A wide and sweeping, but more or less backhanded turn to the right, permits southbound traffic to turn from County Road into Walker Mill Road. Northbound traffic entering Walker Mill Road from County Road would make no sharp turn. It would normally cross the southbound lane of Walker Mill Road and turn slightly to the left to continue on Walker Mill Road.

Just to the north of County Road a gravel road, whose mouth is from 80 to 100 feet wide, takes off westward approximately at a right angle from Walker Mill Road and leads into a gravel pit. A projection of the northwesterly side of the paving on County Road would intersect the pavement on the west side of Walker Mill Road at about the same point where the south side of the entrance to the gravel

pit road meets the west side of the Walker Mill Road paving. North of the entrance to the gravel pit road there is a gravel shoulder about six feet wide on the west side of Walker Mill Road.

Immediately before the accident McDonald was driving south on Walker Mill Road at a speed of about 30 miles an hour. Custer was driving approximately northeast on County Road at a speed which does not appear to have been established. Custer did not stop for the stop signs, but drove past them and onto Walker Mill Road. Once there, instead of crossing into the northbound lane, he proceeded north into the southbound lane and collided head on with McDonald's car at about the north side of the entrance to the gravel pit road. McDonald first saw Custer's car before it reached the stop signs and McDonald saw Custer drive right on past those signs. Just where McDonald was when he saw that Custer was not going to stop and that he would drive through the stop signs is not entirely clear. There is testimony indicating that he was thirty to fifty feet (possibly further) north of the north side of the gravel pit road entrance. At first McDonald thought that Custer was going to cross over into the northbound lane and did not at once slow down or stop. He noticed that Custer's wheels were "shimmying," but thought Custer would make the crossing to the proper lane. Custer, however, continued coming straight towards McDonald, heading north in the southbound lane. McDonald was driving about at the edge of the pavement in his proper lane. Mrs. Wolfe says that he started to swerve first one way and then the other and tried to avoid the collision. McDonald says that he didn't turn at all. He was apparently fearful of trying to turn off onto the right hand shoulder and feared northbound traffic to his left, though there was none near him. By the time he realized Custer was not going to get into his own proper lane and applied his brakes, McDonald's car may have been about twenty feet from Custer's car and it was too late to avoid the collision, which occurred squarely in the southbound lane.

The appellant moved for a directed verdict, the court reserved its ruling thereon, the case went to the jury under in-

structions to which McDonald did not except, and the jury brought in a verdict for $60,000 in favor of the plaintiff Pauline Wolfe and for $7,000 in favor of her husband, against both Custer and McDonald. McDonald's motion for judgment n.o.v., or in the alternative for a new trial, was overruled, and McDonald appealed from judgments entered on the verdicts. Custer did not. He joins in urging the affirmance of the judgment against McDonald.

The appellant contends that he is within the protection of the boulevard rule as a matter of law, under such cases as *Sun Cab Co. v. Cusick*, 209 Md. 354, 121 A. 2d 188; *Sonnenburg v. Monumental Motor Tours, Inc.*, 198 Md. 227, 81 A. 2d 617; *White v. Yellow Cab Co.*, 216 Md. 286, 140 A. 2d 285. In *Sun Cab Co. v. Cusick* (209 Md. at 359), Judge Delaplaine thus stated the rule: "The law is * * * established * * * that where the driver of a motor vehicle enters a through highway in disregard of the boulevard law and collides with a vehicle traveling on the through highway, the collision can be attributed only to his negligence." That this rule is subject to some limitation insofar as negligence or contributory negligence of the driver of the car on the favored highway is concerned, has been recognized in a number of cases before and since *Sun Cab Co. v. Cusick*, from *Greenfeld v. Hook*, 177 Md. 116, 8 A. 2d 888, to *Harper v. Higgs*, 225 Md. 24, 169 A. 2d 661; and *Green v. Zile*, 225 Md. 339, 170 A. 2d 753, and the question is whether the general rule or an exception thereto applies.

The absence from the record of any diagram showing the projection of the sides of the intersecting street makes it difficult to know just how near to or far from the intersection the collision occurred, but it seems that the point must have been outside the actual intersection, as defined in Code (1957), Art. 66½, Sec. 2 (20). There obviously must be some point in space and time at which a violation of the boulevard law ceases to be the proximate cause of an ensuing collision, and some other cause or causes supervene. As this case comes to us the crux of it is whether or not that point had been reached. The point of impact was at the north side of the gravel pit road, which was 80 to 100 feet north of the point

where the prolongation of the northwest side of County Road would intersect the west side of Walker Mill Road.

The usual boulevard case involves a collision actually in or very near the intersection. Cases occurring near but outside of intersections where the boulevard rule has been held inapplicable have been cases in which there has been evidence showing that before the collision the unfavored driver had cleared the intersection and had gotten into his own proper lane, without interfering with the favored driver's right of way through the intersection. This is true of both *Ness v. Males,* 201 Md. 235, 93 A. 2d 541, and *Shaneybrook v. Blizzard,* 209 Md. 304, 121 A. 2d 218. That is not the situation here. Custer never did get through the intersection and never did get to his own proper side of the road on Walker Mill Road. He did clearly and effectively block McDonald's right of way through the intersection by cutting him off from it. The boulevard law imposes two obligations on the driver entering from the unfavored highway. One is to stop before entering, the other is to yield the right of way to traffic on the favored highway. Custer did neither. His obligation to yield the right of way is not limited by the statute to the area within the intersection itself. It extends to traffic approaching on the favored highway—as was said in *Harper v. Higgs, supra,* (225 Md. at 31) "during [its] passage past the intersection." Clearly, Custer did not so yield the right of way. The fact that a collision occurs outside the intersection does not bar the applicability of the boulevard rule, if the collision is the result of a violation of the boulevard law or its equivalent. *Schwartz v. Price,* 215 Md. 43, 136 A. 2d 749.

A major element in the boulevard rule is the absence of reason for the favored driver to foresee the violation of the law by the unfavored driver. This case seems to be unique on its facts among the many cases of collisions at or near "stop" intersections in that it involves the unfavored driver's running along the wrong side of the road from the intersection to the point of impact. Its very uniqueness suggests the unforeseeability on McDonald's part of Custer's extraordinary action. McDonald had seen Custer run past the stop sign without stopping, but he had no reason, so far as we can

tell from the record, to anticipate the very unusual manner in which Custer would then proceed to deny his (McDonald's) right of way. When he realized it or had cause to realize it, it was too late to avoid the accident. In such circumstances we think that the case falls within the usual boulevard rule of such cases as *Sun Cab Co. v. Cusick, Sonnenburg v. Monumental Motor Tours, Inc.,* and *White v. Yellow Cab Co.,* all above cited. Accordingly, the appellant's motion for judgment n.o.v. should have been granted, and the judgment against him is therefore reversed.

> *Judgment against the appellant McDonald reversed without a new trial; the appellees to pay the costs.*