665 A.2d 287

**Dale MALLARD**

v.

**Matthew Randall EARL, et al.**

**No. 1682, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 28, 1995.

450

Anne K. Howard (Anthony M. Ventre and Budow and Noble, P.C., on the brief), Bethesda, for appellant.

Sheldon L. Gnatt (Roger C. Thomas and Reichelt, Nussbaum, LaPlaca & Miller, on the brief) Greenbelt, for appellees Prince George's Co. and Franklin Hall.

Kenneth E. McPherson, Riverdale, for appellee Matthew Earl.

Argued before WENNER, CATHELL, and HOLLANDER, JJ.

HOLLANDER, Judge.

This case concerns the scope and application of the Boulevard Rule in a situation in which the favored and unfavored

drivers have both been sued by the favored driver's passenger. Appellant, Dale Mallard, was the favored driver in an automobile that collided with a bus operated by appellee, Franklin Hall; appellee Matthew Earl was a passenger in Mallard's car. Earl filed suit in the Circuit Court for Prince George's County against Mallard, Hall, and Hall's employer, appellee Board of Education for Prince George's County (the "Board"). After the court denied Mallard's motions for judgment, the jury found that Mallard had been negligent but that Hall had not been negligent. Thereafter, the court denied Mallard's motion for judgment notwithstanding the verdict ("JNOV"). From the judgment entered against him, Mallard has appealed. Earl has filed what he has styled as a "conditional cross-appeal;" he asks us to reach his cross-appeal only if we reverse or vacate the judgment against Mallard.

### ISSUES

Mallard raises several issues for our consideration:

I. Did the Trial Court err in not granting Defendant Mallard's Motions for Judgment and Motion for Judgment Notwithstanding the Verdict?

A. Did the Trial Court erroneously permit the issue of negligence of the favored driver, Appellant Mallard, vel non, to reach the jury in violation of the statutory right-of-way under the Boulevard Rule?

B. Assuming Arguendo That Legally Sufficient Evidence Was Presented At Trial To Divest the Appellant of His Statutory Right–Of[–]Way Under The Boulevard Rule, Was The Evidence Presented At Trial Was [sic] Insufficient to Establish That Any Alleged Excessive Speed or Inattention By Appellant Mallard Was The Proximate Cause of the Accident?

II. Did the trial court erroneously refuse to instruct the jury on the continuing duty under Maryland's Boulevard Rule of the unfavored driver to continuously yield the right-of-way to favored drivers as the unfavored driver crosses the boulevard?

Earl asks us, in the event we reverse or vacate the judgment against Mallard, to consider two additional issues:

I. Did the trial court err by refusing to instruct the jury regarding the unfavored driver's duty to yield the right of way throughout his journey across the boulevard[?]

II. Did the trial court err when it refused to admit into evidence a copy of the docket entries from the case known as *State v. Franklin Hall*, from the District Court of Maryland for Prince George's County, showing that defendant Hall had tendered a plea of guilty for failing to yield the right of way, and by refusing to admit into evidence the transcript from said case containing statements made by defendant Hall[?]

We hold that the trial court erred in denying Mallard's motions for judgment and judgment notwithstanding the verdict. We further hold that Earl's claim of error as to the jury instruction is meritorious. Accordingly, we shall reverse and remand for a new trial concerning Earl's claim against Hall only. As a result, we decline to reach Earl's remaining issue.

## FACTUAL BACKGROUND

On the morning of June 6, 1990, motor vehicles operated by Mallard and Hall collided in the town of Seabrook, Maryland at the intersection of Good Luck Road and a sideroad. Good Luck Road runs east-west with two lanes in each direction, divided by a double yellow line; it has a posted speed limit of 35 miles per hour. The two-lane sideroad changes at Good Luck Road: To the north, it is undivided and is called Palamar Drive; to the south, it is divided by a grass median and is called Woodstream Drive. Palamar and Woodstream both are governed by stop signs at the intersection with Good Luck Road. Also, from the intersection, Good Luck Road curves gradually northward along both the eastbound and westbound lanes.

At the time of the accident, Mallard, who was 17 years old, was driving his father's automobile eastbound on Good Luck Road. Earl and his two sisters were passengers in Mallard's

vehicle. Hall was driving a school bus south on Palamar. The bus, which fortunately was empty, was about 40 to 45 feet in length. The parties contest various details of the collision, but it is undisputed that Mallard's car hit the bus between its right rear wheel and rear bumper while the bus was crossing Good Luck Road.

At trial, Mallard and his passengers (including Earl) all testified that Mallard was driving between 35 and 40 miles per hour. Prior to the collision, "thrash" music [1] was playing on the tape player, and Mallard's passengers were engaged in conversation. Nevertheless, the passengers testified that Mallard had not chosen the music, did not control the volume, and did not take part in the conversation. Moreover, they said that Mallard apparently was paying "full attention" to his driving and did not drive recklessly. None of Mallard's passengers noticed the bus until they heard Mallard yell "look out" just before impact, and they could not recall whether Mallard ever took any specific evasive action.

Mallard asserted that he first saw the intersection as he was about 275 and 300 feet from it, while driving in the fast eastbound lane.[2] Further, he saw Hall's bus at a distance of about 250 to 275 feet, as the bus approached the stop sign at Palamar. According to Mallard, when Mallard was about 175 to 200 feet from the intersection, he observed that Hall failed to stop at the stop sign and rolled across the two westbound lanes of Good Luck Drive. Seeing this, Mallard "let up on the gas," expecting the bus to accelerate across Good Luck and enter Woodstream. Instead, he said, the bus stopped with its front on Woodstream and its rear partially blocking the fast

---

1. Mallard described "thrash" music as "a bit faster," "a little bit heavier," and "a little bit [more] hard core" than ordinary heavy metal music. Specifically, he recalled that the music playing at the time was performed by one of two groups, "Mega Death" or "Metallica."

2. For the sake of consistent referencing, we shall call the various lanes, beginning with the northernmost westbound lane (*i.e.*, the lane adjacent to the curb), as follows: the "slow" or "curbside" westbound lane, the "fast" westbound lane, the "fast" eastbound lane, and the "slow" or "curbside" eastbound lane.

eastbound lane. Mallard testified that he swerved into the westbound lanes to avoid the bus, but had to swerve back into the eastbound lanes to avoid oncoming westbound traffic. He hit the brakes, but to no avail. Mallard admitted, through deposition testimony read at trial, that he "didn't slam on [his] brakes at any point in time until [he] was about to hit the bus." Mallard estimated that the whole incident, from the time Hall entered the eastbound lanes until impact, occurred in less than five seconds.

Hall painted a contrasting picture. He averred that, at the point that he approached Good Luck, he came to a complete stop at the stop sign, but he could only see up to 60 feet eastbound and 50 feet westbound. After looking both ways, he began to proceed slowly across Good Luck. Hall first saw Mallard's car when the bus entered the fast westbound lane, but before it had crossed the median. Hall estimated that when he then saw Mallard's car it was about 120 to 150 feet away in the curbside eastbound lane. Hall acknowledged that he only caught a glimpse of Mallard and, based on that glimpse, Hall "flinched." But, as he believed he could traverse Good Luck safely, he accelerated his bus. He admitted never looking back toward Mallard, but denied stopping the bus prior to the collision. Although Hall is a professional driver, he could not offer even an approximation of Mallard's speed. Hall believed, however, that Mallard was travelling "well in excess" of 35 miles per hour.

## DISCUSSION

### I. Mallard's Motions For Judgment

Preliminarily, we observe that a party is entitled to a motion for judgment or for JNOV when the evidence at the close of the case, taken in the light most favorable to the nonmoving party, does not legally support the nonmoving party's claim or defense. *I.O.A. Leasing Corp. v. Merle Thomas Corp.*, 260 Md. 243, 248–49, 272 A.2d 1 (1971); *Smith v. Bernfeld*, 226 Md. 400, 405, 174 A.2d 53 (1961). On review, this Court must assume the truth of all credible evidence and

all inferences of fact reasonably deducible from it tending to sustain the decision of the trial court in favor of the nonmoving party. *Campbell v. Baltimore Gas & Elec. Co.*, 95 Md. App. 86, 94, 619 A.2d 213, *cert. denied*, 331 Md. 196, 627 A.2d 538 (1993).

> "[I]f there be any evidence, however slight, *legally sufficient* as tending to prove negligence, . . . the weight and value of such evidence will be left to the jury." "Legally sufficient" means "that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value."

*Myers v. Bright*, 327 Md. 395, 399, 609 A.2d 1182 (1992) (quoting *Fowler v. Smith*, 240 Md. 240, 246, 213 A.2d 549 (1965) (emphasis added in *Myers*)). *See also Franklin v. Gupta*, 81 Md.App. 345, 354, 567 A.2d 524 (1990). If, however, the evidence, taken as a whole, does not rise above speculation, hypothesis, and conjecture, then the trial court should not allow the jury to consider the issue, and the denial of a motion for judgment or JNOV would be error. *Myers*, 327 Md. at 399, 609 A.2d 1182; *see also Higgins v. City of Rockville*, 86 Md.App. 670, 687, 587 A.2d 1168, *cert. denied*, 323 Md. 309, 593 A.2d 669 (1991).

As noted, to support his assertion that he was entitled to judgment, Mallard has relied on the Boulevard Rule. Although the Rule has roots in cases prior to 1939, the widely acknowledged source of the Rule is *Greenfeld v. Hook*, 177 Md. 116, 8 A.2d 888 (1939). *See Dean v. Redmiles*, 280 Md. 137, 143–47, 374 A.2d 329 (1977) (tracing history of the Boulevard Rule). The Rule arises from the historical statutory mandate that a driver at an intersection who is required to stop before entering the intersection (called the "unfavored driver") must yield the right-of-way to a driver not required to stop before entering (called the "favored driver"). *Id.* at 143–44, 374 A.2d 329; *Creaser v. Owens*, 267 Md. 238, 244–45, 297

A.2d 235 (1972). Originally, if the unfavored driver failed to yield the right-of-way and a collision ensued, the unfavored driver was absolutely liable as a matter of law. *Creaser,* 267 Md. at 245, 297 A.2d 235.

After 1971, when the Legislature modified the definition of "right-of-way," [3] the Court began to recognize a significant exception to the otherwise inflexible Boulevard Rule. Consequently, the rule no longer affords absolute protection to the favored driver who is driving in an unlawful manner. *Dennard v. Green,* 335 Md. 305, 311 n. 2, 313–314, 643 A.2d 422 (1994); *see also Covington v. Gernert,* 280 Md. 322, 373 A.2d 624 (1977) (first case governed by new definition); *Redmiles,* 280 Md. at 161, 374 A.2d 329. As the Court said in *Redmiles,* "[t]he favored driver . . . [is] not excused by the boulevard rule from his duty of exercising due care for his passenger." *Id.,* 280 Md. at 160–61, 374 A.2d 329.

Even so, to render the Boulevard Rule inapplicable, it is not enough that the favored driver proceeds unlawfully. The rule still holds the unfavored driver liable for a collision if the favored driver's unlawful conduct was not a proximate cause of the collision. *Myers,* 327 Md. at 405, 609 A.2d 1182 (mere fact that favored driver's speed exceeded the posted limit is "not enough to support a verdict based on negligence unless there is some further showing that this excessive speed is a direct and proximate cause of the injury.").

In the seminal case of *Dean v. Redmiles,* 280 Md. 137, 374 A.2d 329 (1977), the Court considered the precise question at issue here: "the liability of the favored driver to a passenger in his [own] vehicle." *Id.* at 139, 374 A.2d 329. The Court engaged in an exhaustive analysis of the case law with respect to the Boulevard Rule and concluded that the Boulevard Rule

---

**3.** Originally, "right-of-way" was defined as "[t]he privilege of the immediate use of the highway;" Md.Ann.Code of 1957, Art. 66½, § 2(a)(45) (1970). Presently, under Md.Code Ann., Trans. Art. § 21-101(r) (1992), "right-of-way" is defined as "the right of one vehicle or pedestrian to proceed *in a lawful manner* on a highway in preference to another vehicle or pedestrian." (Emphasis added).

does not "insulate this driver from liability to his passenger...." *Id.* at 139–40, 374 A.2d 329.

The Court classified eight categories of boulevard law cases:

[T]he suit of the favored driver against the unfavored driver, the unfavored driver against the favored driver, the passenger of an unfavored driver against the favored driver, the passenger of an unfavored driver against both drivers, *the passenger of the favored driver against both drivers,* the passenger of the favored driver against the unfavored driver, *the passenger of the favored driver against the favored driver,* and, finally, counterclaims so that the favored and unfavored drivers are suing each other.

*Id.* at 144, 374 A.2d 329 (emphasis added); *see also Id.* at 144–46, 374 A.2d 329 (collecting cases for each category). Upon reviewing the dynamics of each category, the Court distilled several principles governing Boulevard Rule cases. As a general matter, the Rule is an expression of the policy encouraging the expedited flow of traffic on the favored boulevard, and a driver violating the Rule does so at his or her own risk. *Id.* at 147, 374 A.2d 329. Further, "A favored driver may assume that others will obey the law and he need not anticipate their violation of the law. However, the favored driver may not proceed in complete disregard of obvious danger." *Id.* at 148, 374 A.2d 329 (citations omitted). The unfavored driver, when sued by the favored driver, is guilty of negligence as a matter of law in the absence of a showing of contributory negligence on the part of the favored driver. *Id.* at 147–48, 374 A.2d 329. Similarly, the unfavored driver, as plaintiff, is vulnerable to a motion for judgment because the unfavored driver's failure to yield ordinarily constitutes contributory negligence as a matter of law. *Id.* at 147, 374 A.2d 329. And, as a corollary, the unfavored driver is generally liable to his or her own passengers. *Id.* at 148, 374 A.2d 329. *But see Dennard,* 335 Md. 305, 643 A.2d 422 (jury verdict against the passenger of unfavored driver and in favor of the favored and unfavored drivers upheld on grounds that jury was entitled to find passenger had failed to prove that the negligence of

either driver was a proximate cause). Moreover, and perhaps most pertinent here, the Boulevard Rule "does not relieve the favored driver from the duty to use that degree of care for a passenger in his vehicle which one expects a normally prudent driver to exercise on behalf of his passenger." *Redmiles*, 280 Md. at 149, 374 A.2d 329.

■ Further, in some boulevard law cases, the proximate cause of the collision may be attributed to the concurrent negligence of *both* the favored and the unfavored drivers. *Id.* at 156, 374 A.2d 329 (citing *Yellow Cab Co. v. Bonds*, 245 Md. 86, 90, 225 A.2d 41 (1966)). Under such circumstances, in a suit by a passenger against either or both drivers, so long as each driver's negligence constituted *a* proximate cause of the collision, the negligence of one driver does not excuse the negligence of the other driver. *Id.* (citing same).

Here, the parties agree that Mallard was the "favored driver" and Hall the "unfavored driver" under the Boulevard Rule. They also agree that Hall had a duty under the rule to stop and yield the right-of-way to Mallard. Mallard contends, however, that the evidence was insufficient to permit the jury to find that Mallard had been travelling in an unlawful manner. Consequently, he claims that he is entitled to protection from liability under the Boulevard Rule. Based on our review of the law and the evidence, we agree that the evidence was not legally sufficient to warrant denial of Mallard's motions. We explain.

Of the various Boulevard Rule cases involving suits by the passenger in the favored vehicle against the favored driver, particularly those reviewed in *Redmiles*, several have factual patterns relevant to the analysis of the instant matter. In particular, two pairs of cases stand out: first, *Sun Cab Co. v. Cusick*, 209 Md. 354, 121 A.2d 188 (1956) and *Kopitzki v. Boyd*, 277 Md. 491, 355 A.2d 471 (1976); second, *Sun Cab Co. v. Hall*, 199 Md. 461, 86 A.2d 914 (1952) and *White v. Yellow Cab Co.*, 216 Md. 286, 140 A.2d 285 (1958).

In *Cusick*, the unfavored driver admitted that he failed to stop at a stop sign. But he testified that the favored driver, a

taxicab operator, was "driving at an excessive speed" or at "a great rate of speed." The favored driver denied speeding and claimed that he was only driving 25 miles per hour. Based on the lengthy skid marks, the Court allowed that the cab probably was travelling at a speed faster than 25 miles per hour. Nonetheless, the Court said:

> [T]he driver of the taxicab had the right to assume that [an unfavored driver] would stop and yield the right of way to him.... Even though the cab may have been travelling at a rapid rate of speed, *it was the gross negligence of [the unfavored driver], and not the cab's rate of speed, that was the proximate cause of the accident. It would be mere conjecture to say that the cab might not have been struck if its rate of speed had been different.*

*Id.* at 360, 121 A.2d 188 (emphasis added). Accordingly, based on the evidence, the Court held that the favored driver was entitled to judgment.

In *Kopitzki,* the favored driver argued that the trial court erred by not directing judgment in his favor against the favored passenger, based on the Boulevard Rule, despite evidence that the favored driver had been speeding and drinking. The testimony established that the favored driver was travelling at a rate between 70 and 90 miles per hour on a boulevard having a speed limit of either 45 or 50 miles per hour. The favored driver, after passing to the right of a car cruising in the left lane, collided with an unfavored driver who had been attempting to cross the road. The Court held that, because the favored driver clearly had been driving nearly twice the posted speed limit, the issue of whether the favored driver's speed and inattentiveness was a proximate cause of the collision properly had been submitted to the jury. 277 Md. at 497, 355 A.2d 471. *Cf. Yellow Cab Co. v. Bonds,* 245 Md. 86, 91–92, 225 A.2d 41 (1966) (in a rear-end collision between two favored drivers, tailgating cab could not avoid the car in front of it when the forward car slowed to allow an unfavored driver to cross the boulevard; the question of cab's

inattentiveness as proximate cause of collision was properly submitted to jury). What the Court said is pertinent here:

"Ordinarily, in most boulevard cases, it is not material what the favored driver was doing. The accident would never have happened if the unfavored vehicle had yielded right of way, and the conduct of the unfavored driver is the sole proximate cause of the accident. But if it can be shown that the favored driver could have avoided the accident if he had been operating lawfully and with due care, then the negligence of the favored driver should be an issue for the jury."

*Id.* at 496, 355 A.2d 471 (citation omitted).

In *Hall,* the passenger testified that the favored cabdriver turned his head to talk to the passenger, and so failed to see that an unfavored driver had begun to enter an intersection ahead. But, when the passenger gave a warning well in advance of the collision, the driver did nothing until the very last moment. The taxi driver denied turning his head in the first place. Recognizing that the favored driver is ordinarily not under a duty to anticipate that the unfavored driver will fail to yield the right-of-way, the Court held that, where the driver *does* have reason to anticipate it, the driver still has a duty of ordinary care. 199 Md. at 466–67, 86 A.2d 914. The Court concluded that enough evidence had been adduced to submit to the jury the issue whether, had the favored driver been paying attention, he could have avoided the collision.

Similarly, in *White,* the passenger/plaintiff alleged that the favored taxi driver turned his head to respond to a statement by the passenger and, in so doing, failed to avoid the collision in the intersection with the unfavored driver. When the passenger sued the cabdriver and cab company, they impleaded the unfavored driver. The trial court granted judgment notwithstanding the verdict in favor of all the defendants and the passenger appealed. In affirming, the Court distinguished *Hall.* The Court concluded that "the mere turning of the driver's head to speak to the passenger [did] not give rise to an inference of negligence...." *Id.,* 216 Md. at 289, 140 A.2d 285. The Court pointed out that, even if the favored driver

had turned his head, he would have seen the other car because it approached from the direction of the passenger side. Thus, the favored driver was protected by the Boulevard Rule, as the passenger had not shown that the driver's conduct was the proximate cause of the accident.

The factual scenario in *Redmiles* is also relevant. There, the unfavored driver had stalled across the boulevard for over a minute prior to the collision, and the favored driver was travelling between 55 and 70 miles per hour when he collided. Another driver, travelling parallel to the favored driver, was able to avoid colliding with the unfavored driver. Further, the favored driver, who was killed in the collision, had left over 230 feet of skidmarks on the road, all in the "slow" lane. The Court held that, in an action by any passenger against the favored driver, "if the evidence before the court is sufficient to support a conclusion that the speed of the favored driver was a proximate cause of the accident, then this becomes a jury question." 280 Md. at 161, 374 A.2d 329. *Redmiles* made clear, however, that the "fact that the favored driver is violating the speed limit does not become a jury question *unless the evidence is sufficient* to warrant a conclusion that the violation is a proximate cause of the injury...." *Id.* at 151–52, 374 A.2d 329 (emphasis added). Because the undisputed evidence permitted reasoning minds to conclude that the excessive speed of the favored driver was a proximate cause of the collision, the Court concluded that the jury was properly permitted to consider the favored driver's liability. *Id.* at 162, 374 A.2d 329.

The recent case of *Dennard v. Green* also bears consideration, although the plaintiff there was the passenger of the *unfavored* driver. In *Dennard,* the unfavored driver came to a complete stop, looked both ways, and edged into the intersection. When he came to the median, he again stopped and looked both ways before proceeding. Seeing a "red flash" to his right, he turned just in time to observe the favored driver approaching and to step on the brakes before they collided. The unfavored driver and his passenger estimated that the favored driver had been moving between 45 and 50 miles per

hour, although the speed limit was 25 miles per hour. In contrast, the favored driver averred that he was only travelling at 25 miles per hour, and that the unfavored driver failed to come to a complete stop before entering his lane of traffic. The jury found in favor of both drivers and against the unfavored passenger, and the trial court denied the passenger's motion for JNOV or new trial.

On appeal by the passenger, the passenger argued that at least one driver had to have been negligent as a matter of law. The Court disagreed. After analyzing *Redmiles* at length, it held that the passenger bears the burden of proving, with respect to *each* driver, that the driver's negligence was a proximate cause of the accident. The Court said:

> *Redmiles* stands for the proposition that the jury should determine whose negligence was the proximate cause of the accident when evidence sufficient to present that issue has been adduced. It does not even remotely suggest any restrictions in the jury's function in that regard. The argument that, once the jury resolved the issue of the favored driver's negligence, the unfavored driver must be liable as a matter of law, would have that effect.... In a boulevard rule case, where all of the potentially negligent parties are before the court, the jury's task extends not only to determining the negligence of the favored driver and its causal relationship to the accident, but of the unfavored driver as well.

> Indeed, when all of the potentially negligent parties are before the court, no jury issue as to the proximate cause can be presented unless there is a factual issue as to which of those parties caused the accident, unless the evidence permits more than one conclusion to be drawn, that is, the evidence and the inferences from it are conflicting in that regard.

335 Md. at 319, 643 A.2d 422.

With these cases serving as a framework, we turn to the particular evidence adduced at trial. We conclude that the

evidence was insufficient under the circumstances to justify submission of Mallard's conduct to the jury.

To substantiate their allegation that Mallard, a teenager, was not paying attention to his driving, appellees made much of the fact that "thrash" music was playing in the car and that Mallard's passengers were engaged in conversation. We fail to see how this evidence, standing alone, supports an inference of inattentiveness. That music is playing and passengers are conversing—hardly uncommon occurrences—does not mean that the favored driver is not paying attention. Moreover, *all* of Mallard's passengers, including plaintiff Earl, testified that Mallard was not participating in the conversation, that Mallard did not control the selection or volume of music, and that Mallard was not driving recklessly. In sum, at least on this basis, there was no probative evidence that Mallard was inattentive or that his inattention was a proximate cause of the collision. *See Myers,* 327 Md. at 408, 609 A.2d 1182 (examples of evidence that would support conclusion that driver's inattentiveness caused the accident).

Appellees also claim that Mallard was speeding. They rely on the vague assertion by Hall, a professional driver, that Mallard was driving "well in excess" of the speed limit. But Hall conceded that he was only able to get a glimpse of Mallard, which was not sufficient to enable Hall even to estimate Mallard's speed. Further, by his own admission, Hall never bothered to look back.

In stark contrast to this threadbare offering of evidence stand *Redmiles* and *Kopitzki.* In both of those cases, there were other vehicles travelling on the boulevard with the favored driver. They testified that they had been able to avoid colliding with the unfavored vehicle and that the other favored drivers, who did collide, were speeding. Also, in both cases, the favored driver involved in the collision left extended skid marks on the pavement of the slow lane—patent, concrete evidence of speeding. Nothing presented by appellees in this case approaches the level of proof attained in both *Redmiles*

and *Kopitzki.* Nor did appellees present any expert testimony to support their contention.

Appellees also repeatedly refer to Mallard's "stubborn" refusal to brake prior to the collision, when, in appellees' view, Mallard had ample opportunity to do so. They rely on Mallard's testimony that he saw the bus enter the westbound lanes of the intersection when he was 175 to 200 feet away and that, when he first saw the bus, he was travelling between 35 and 40 miles per hour.[4] Under Hall's version, he first *saw* Mallard when the automobile was 120 to 150 feet from the intersection, and *thereafter,* Hall accelerated the bus into the intersection.

Mallard asserted that when the bus entered the westbound lanes he took his foot off the accelerator pedal, but did not brake until immediately prior to impact. From this failure alone, appellees contend, the jury had sufficient evidence to find Mallard liable. Assuming Mallard was as much as 200 feet away when he first saw the bus in the westbound lanes,[5] that he did nothing immediately thereafter, and that his average speed was 50 feet per second,[6] he would have traversed the entire distance in, at most, four seconds.

It is apparent that, from the moment Hall created the hazard, Mallard had precious little time in which to avoid a collision. Moreover, in order to reach appellees' conclusion, the jury would have had to engage in precisely the sort of

---

**4.** Mallard testified that the hazard did not arise the instant he saw the bus; rather, it arose moments later—after the bus had crossed into the eastbound lanes and stopped.

**5.** Of course, by the time the bus would have reached the eastbound lanes, Mallard would have been even closer to the intersection.

**6.** We observe that a speed range of 35 to 40 miles per hour is equivalent to a range of 51 to 58 feet per second. To be sure, the testimony referred to speeds only in miles per hour, not in feet per second. We note, though, that the conversion can be easily calculated, as follows:

$$\frac{(30 \text{ miles})}{(\text{hour})} \times \frac{(5280 \text{ feet})}{(1 \text{ mile})} \times \frac{(1 \text{ hour})}{(3600 \text{ seconds})} = \frac{44 \text{ feet}}{\text{second}}$$

"nice calculations of speed, time or distance" that the Boulevard Rule was designed to avoid. *Redmiles*, 280 Md. at 150, 374 A.2d 329. As the Court said in *Redmiles*, "it is only in a rare instance in our cases involving the boulevard law where it may fairly be said that the speed of the favored driver was a proximate cause of the accident in such manner that the question should be considered by the jury." *Id.* Clearly, Mallard had no duty to anticipate that Hall would not remain in the westbound lanes, until Mallard passed, or that Hall would utterly fail to yield the right of way. *Id.* at 149, 374 A.2d 329 (citing *Fowler v. DeFontes*, 211 Md. 568, 574, 128 A.2d 395 (1957)); *Thompson v. Terry*, 245 Md. 480, 487, 226 A.2d 540 (1967); *see also McDonald v. Wolfe*, 226 Md. 198, 203, 172 A.2d 481 (1961) ("A major element in the boulevard rule is the absence of reason for the favored driver to foresee the violation of the law by the unfavored driver."). As there was no expert testimony concerning the amount of time or the number of feet it would have taken Mallard to decelerate safely, the jury would have had to engage in rank speculation to determine whether Mallard's failure to brake was the proximate cause of the collision.

The evidence presented by appellees as to Mallard's conduct is hardly sufficient foundation upon which a rational fact-finder could base a conclusion that Mallard was, in fact, driving in an unlawful manner, or, if he was, that the unlawful conduct was a proximate cause of the accident. *See Myers*, 327 Md. at 404, 609 A.2d 1182 ("We must keep in mind that there is no hard evidence that Myers was, in fact, speeding. There is merely a possibility that she was driving her car a few miles an hour above the posted limit."). No evidence was presented that, if Mallard had not been speeding or if he had been paying closer attention, the collision could have been avoided.

In any event, even if the jury wholly accepted Hall's version of events, he acknowledged that he decided to cross the eastbound lanes of Good Luck Road when Mallard was, presumably, some 150 feet away and driving well in excess of 35 miles per hour. Hall, who said that at that time he was

accelerating from a full stop at the stop sign, would have had to maneuver his slow-moving 45–foot bus completely across two lanes of traffic before the speeding car could traverse 150 feet. No matter who the jury chose to believe, Hall's unjustified failure to yield the right-of-way to Mallard *created* the hazard Mallard faced in the first instance. And, had Hall yielded the right-of-way, as required by the Boulevard Rule, the collision obviously never would have occurred.[7]

The Boulevard Rule has been somewhat weakened over the years, but it remains a viable principle. If it has any vitality at all, this is surely a case where its protections apply. Consequently, we conclude that the trial court erred in failing to grant Mallard's motions for judgment or JNOV. We turn, therefore, to Earl's cross-appeal.

## II. Jury Instructions

As requested by both Mallard and Earl, the court clearly and thoroughly instructed the jury concerning the Boulevard Rule. In particular, the court instructed the jury that an unfavored driver has a duty to stop and look prior to entering the intersection, and that Hall was the unfavored driver. Earl contends, however, that the court erred in failing to instruct the jury that the unfavored driver's duty to yield the right-of-way to the favored driver *continues* until the unfavored driver has merged into traffic or has passed beyond the intersection.

We agree.

"[A] driver who enters, from an unfavored highway, an intersection with a favored boulevard or arterial highway where there are no traffic controls *must yield the right of way to all the traffic he finds there during the entire time he is there.* If he does not, and a collision results, he is at fault. . . ."

*Gazvoda v. McCaslin,* 36 Md.App. 604, 609, 375 A.2d 570 (1977) (quoting *Shedlock v. Marshall,* 186 Md. 218, 235, 46 A.2d 349 (1946)) (emphasis ours). *See also Id.* at 614, 375

---

7. In this light, the jury's exoneration of Hall is perplexing.

A.2d 570 (quoting *Grue v. Collins,* 237 Md. 150, 157, 205 A.2d 260 (1964), the unfavored driver " 'is not a perpetual pariah; if he has observed the mandates of the law in entering the intersection *and has become a part of the flow of traffic* on the favored highway, he has the same rights and is subject to the same duties as the other drivers....' " (emphasis ours)). As the Court said in *Redmiles:* " 'If the entering car *has cleared the intersection and reached a point where it does not interfere with the favored driver's right of way* through the intersection, the boulevard law ceases to be applicable.' " 280 Md. at 149, 374 A.2d 329 (quoting *McCann v. Crum,* 231 Md. 65, 68, 188 A.2d 537 (1963)) (emphasis ours; citations omitted).

The case of *McDonald v. Wolfe,* 226 Md. 198, 172 A.2d 481 (1961), is instructive. There, the unfavored driver, in attempting to execute a left turn onto the northbound lane of the boulevard, instead entered the southbound lane going north, and in so doing, cut in front of the favored driver heading south. Although the collision did not occur within the intersection, the unfavored driver was held liable to the favored driver *under the Boulevard Rule.* What the Court said there is pertinent here:

> The usual boulevard case involves a collision actually in or very near the intersection. Cases occurring near but outside of intersections where the boulevard rule has been held inapplicable have been cases in which there has been evidence showing that before the collision the unfavored driver had cleared the intersection and had gotten into his own proper lane without interfering with the favored driver's right of way through the intersection.... That is not the situation here.... The boulevard law imposes two obligations on the driver entering from the unfavored highway. One is to stop before entering, the other is to yield the right of way to traffic on the favored highway. [The unfavored driver] did neither. His obligation to yield the right of way is not limited by the [Boulevard Rule] to the area within the intersection itself. It extends to traffic approaching on the favored highway—as we said in *Harper v. Higgs,* [225 Md.

24, 31, 169 A.2d 661 (1961),] "during [its] passage past the intersection."

*Id.* at 203, 172 A.2d 481 (other citations omitted).

When requested by a party, the court has a duty to instruct the jury on that party's theory of the case, provided the proposed instruction is supported by the facts and is not otherwise adequately covered by other instructions. Md.Rule 2–520; *Sergeant Co. v. Pickett,* 285 Md. 186, 193, 401 A.2d 651 (1979); *Levine v. Rendler,* 272 Md. 1, 13, 320 A.2d 258 (1974); *Schaefer v. Publix Parking,* 226 Md. 150, 152–53, 172 A.2d 508 (1961). Here, the court instructed the jury based on the relevant instructions contained in the *Maryland Pattern Jury Instructions.* The parties agree that, as far as these instructions go, they properly state the law. But none of these instructions addressed the continuing nature of the unfavored driver's duty to yield. Under either Hall's version or Mallard's version of the events in question, Hall failed to stop upon reaching the median of Good Luck and, consequently, he failed to yield the right-of-way to Mallard as required by the Boulevard Rule. Without an instruction concerning a continuing duty, however, the jury could have concluded that Hall's original stop at the stop sign (if they believed his version) fully satisfied his duty under the Boulevard Rule to yield the right-of-way. As this would not be a valid conclusion under the law, Earl was therefore entitled to the instruction he requested.

**JUDGMENT AGAINST MALLARD REVERSED; CASE REMANDED FOR NEW TRIAL WITH RESPECT TO CLAIM BY EARL AGAINST HALL AND BOARD.**

**COSTS TO BE PAID ONE–HALF BY APPELLEE EARL AND ONE–HALF BY CROSS–APPELLEES HALL AND BOARD.**